[Nos. H036065, H036308. Sixth Dist. Dec. 11, 2012.]

LAUREN OIYE, Plaintiff and Respondent, v.
JAMES DANIEL FOX, Defendant and Appellant.

1038

**COUNSEL**

Kass and Kass Law Offices and Bradley Kass for Defendant and Appellant.

Morgan, Franich, Fredkin & Marsh, William Siamas and Donn Waslif for Plaintiff and Respondent.

**OPINION**

**RUSHING, P. J.—**

### I. INTRODUCTION

In April 2010, defendant James Daniel Fox filed no contest pleas to one felony count of lewd contact with a child under the age of 14 (count 2; Pen. Code, § 288, subd. (a)) and two felony counts of lewd touching of a child

who was 14 or 15 years old and 10 years younger than defendant (counts 4, 7; Pen. Code, § 288, subd. (c)(1)). In May 2010, plaintiff Lauren Oiye filed this tort action alleging that she was defendant's victim, that he had repeatedly sexually molested her from the age of 12 through April 2009, when she was 21.

Defendant has filed two notices of appeal from pretrial orders. One is a preliminary injunction issued in July 2010 prohibiting defendant and his agents from concealing, encumbering, impairing the value, transferring, or disposing of any of defendant's assets except in the usual course of business or for the necessities of life. The court ordered plaintiff to post an undertaking of $1,000. The other is a September 2010 order sealing a declaration and its exhibits filed by defense counsel on June 25, 2010, in opposition to the request for a preliminary injunction. This court has ordered the two appeals considered together for purposes of oral argument and decision.[1]

On appeal, defendant contends that the trial court abused its discretion in granting the preliminary injunction. It should not have relied so heavily on his no contest pleas or plaintiff's "self-serving" declaration, and it should have accommodated his inability to respond without waiving his privilege against self-incrimination. He also contends that the low amount of the bond was an abuse of discretion and that the sealing order was not justified by either the plaintiff's showing or the court's factual findings. For the reasons stated below, we will affirm both orders, after finding that some of defendant's contentions are not reviewable, others have been forfeited due to his failure to raise them in the trial court, and the remaining contentions are unpersuasive.

## II. Proceedings

On May 27, 2010, plaintiff filed an unverified complaint predicating several causes of action on defendant's having sexually molested plaintiff from the age of 12 through the age of 21, for which he was convicted by no contest pleas in April 2010. The causes of action are entitled "childhood sexual abuse," "sexual assault and battery," "false imprisonment," "negligent infliction of emotional distress," "intentional infliction of emotional distress," "negligence," and "fraudulent transfer." (Capitalization omitted.) The fraudulent transfer claim is that, after defendant was arrested on a warrant issued on

---

[1] At oral argument, the parties brought to our attention that a third appeal has been filed in this case. We take judicial notice from our records that *Oiye v. Fox* (H038410, app. pending) was filed following a judgment entered February 7, 2012, on a jury verdict. The opening brief is not yet due. We will base our decision in these appeals on the record that was before the trial court when it made the pretrial orders that are challenged in these appeals.

December 22, 2009, he transferred his Santa Clara residence on February 1, 2010, to the James D. Fox Trust for the purpose of hindering, delaying, or defrauding plaintiff.

On June 4, 2010, plaintiff filed a two-part motion, seeking (1) to enjoin defendant from concealing, transferring, encumbering, or disposing of any assets and interest in real and personal property and (2) to compel defendant to disclose to plaintiff financial statements and records revealing the fair market value of his assets from January 1, 2005, through the present. The motion was based on declarations by plaintiff and her attorney.

Plaintiff's declaration briefly recited that defendant had sexually molested her continuously beginning when she was 12 years old in 2000 through April 2009. As a result of this molestation, she has spent approximately 12 months as an inpatient in several medical facilities to treat her severe eating disorders, anxiety, and depression.

Plaintiff's attorney's declaration attached the minutes of a criminal case reflecting that defendant had pleaded no contest on or about April 22, 2010, to one felony count of lewd contact with a child under the age of 14 (count 2; Pen. Code, § 288, subd. (a)) and two felony counts of lewd touching of a child who was 14 or 15 years old and 10 years younger than the defendant (counts 4, 7; Pen. Code, § 288, subd. (c)(1)) for which he would be sentenced to six years in prison, with remaining charges to be dismissed. The declaration also attached a grant deed transferring defendant's interest in Santa Clara real property to defendant as trustee of the James D. Fox Qualified Personal Residence Trust. The attorney declared that this transfer occurred shortly after defendant was arrested on the criminal charges.

Defendant opposed both of these requests by a memorandum of points and authorities, a request for judicial notice, and a declaration by defense counsel filed on June 25, 2010. Attached to the declaration were three exhibits, an August 28, 2007 letter from PacifiCare Behavioral Health denying plaintiff authorization for certain medical treatment (exhibit A), an October 23, 2007 letter from Maximus Center for Health Dispute Resolution upholding the denial of reimbursement for medical services for plaintiff (exhibit B), and a copy of plaintiff's 52-page personal diary (exhibit C) "believed to have been written by her while she was enrolled at the Oceanaire Residential Treatment [P]rogram in the summer of 2007."

After argument at a hearing on July 8, 2010, by an order dated July 19, 2010, the court adopted its tentative ruling and (1) granted plaintiff a preliminary injunction prohibiting defendant and his agents from concealing, transferring, encumbering, or disposing of any assets and interest in real and

personal property except in the usual course of business or for the necessities of life, and (2) also ordered defendant to provide plaintiff with all his financial statements that revealed the fair market value of his assets owned from January 1, 2005, through the date of the order. Over defendant's objection, the court required plaintiff to post an undertaking of $1,000. On September 20, 2010, defendant filed a notice of appeal from this order.

At the hearing on July 8, 2010, plaintiff's counsel asked that defendant's counsel withdraw his declaration insofar as it attached plaintiff's private medical records. On September 24, 2010, plaintiff filed an ex parte application to seal defense counsel's declaration and its attachments. The application was essentially unopposed.[2] After a hearing on September 28, 2010, on the same date the court entered an order sealing the declaration of defense counsel and attached exhibits and ordered defendant to refrain from filing additional medical or personal records of plaintiff without prior court approval. On November 29, 2010, defendant filed a notice of appeal from this order.

### III. STANDARD OF REVIEW OF PRELIMINARY INJUNCTION

On appeal, "[w]e review an order granting a preliminary injunction under an abuse of discretion standard. [Citations.] Review is confined, in other words, to a consideration whether the trial court abused its discretion in ' "evaluat[ing] two interrelated factors when deciding whether or not to issue a preliminary injunction. The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm the defendant is likely to suffer if the preliminary injunction were issued." ' [Citation.]" (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109 [60 Cal.Rptr.2d 277, 929 P.2d 596].)

"A trial court will be found to have abused its discretion only when it has ' "exceeded the bounds of reason or contravened the uncontradicted evidence." ' [Citations.] Further, the burden rests with the party challenging the injunction to make a clear showing of an abuse of discretion." (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121].)

Defendant contends that the injunction in this case merits heightened appellate scrutiny because it is a mandatory injunction. *Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618 stated at page 625 [43 Cal.Rptr.2d 774]: " 'Where, as here, the preliminary injunction mandates an affirmative

---

[2] We will provide more details of this hearing below where relevant.

act that changes the status quo, we scrutinize it even more closely for abuse of discretion. "The judicial resistance to injunctive relief increases when the attempt is made to compel the doing of affirmative acts. A preliminary mandatory injunction is rarely granted, and is subject to stricter review on appeal." ' (*Board of Supervisors* v. *McMahon* (1990) 219 Cal.App.3d 286, 295 [268 Cal.Rptr. 219], fn. omitted.)"

█ "An injunction is a writ or order requiring a person to refrain from a particular act." (Code Civ. Proc., § 525.)[3] "[T]he general rule is that an injunction is prohibitory if it requires a person to refrain from a particular act and mandatory if it compels performance of an affirmative act that changes the position of the parties." (*Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 446 [60 Cal.Rptr.2d 641].) An injunction designed to preserve the status quo as between the parties and to restrain illegal conduct is prohibitory, not mandatory, and does not require heightened appellate scrutiny. (*People ex rel. Brown v. iMergent, Inc.* (2009) 170 Cal.App.4th 333, 342–343 [87 Cal.Rptr.3d 844].)

Defendant asserts that the court has affirmatively required him to "not transfer any assets other than for normal business and necessities of life." This assertion is self-contradicting. We agree with plaintiff that the essence of this order, that defendant not encumber his assets or divest himself of them, is prohibitory. It directs affirmative inaction by defendant, not affirmative action.

Defendant also points to that part of the order that he affirmatively produce personal financial records. As plaintiff responds, this order was not granted as part of the preliminary injunction, but rather as early discovery in this case pursuant to Code of Civil Procedure section 2031.020, subdivision (b), and Civil Code section 3295, subdivision (c).[4] To the extent this mandates action

---

[3] Unspecified section references are to the Code of Civil Procedure.

[4] Civil Code "[s]ection 3295 was enacted in 1979 to protect against the premature disclosure of a defendant's financial condition when punitive damages are sought." (*Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 777 [63 Cal.Rptr.2d 859, 937 P.2d 290].)

Subdivision (c) of Civil Code section 3295 states: "No pretrial discovery by the plaintiff shall be permitted with respect to the evidence referred to in paragraphs (1) and (2) of subdivision (a) unless the court enters an order permitting such discovery pursuant to this subdivision. However, the plaintiff may subpoena documents or witnesses to be available at the trial for the purpose of establishing the profits or financial condition referred to in subdivision (a), and the defendant may be required to identify documents in the defendant's possession which are relevant and admissible for that purpose and the witnesses employed by or related to the defendant who would be most competent to testify to those facts. *Upon motion by the plaintiff supported by appropriate affidavits and after a hearing, if the court deems a hearing to be necessary, the court may at any time enter an order permitting the discovery otherwise prohibited by this subdivision if the court finds, on the basis of the supporting and opposing affidavits presented, that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294.* Such order

by defendant, the order is not part of the preliminary injunction, but derives from separate statutory authority. It does not alter the prohibitory nature of the ruling on the injunction.

Defendant asserts that some of the trial court's remarks at the hearing about the no contest pleas and possible restitution indicate that the trial court evaluated the evidence improperly. On appeal, we review the correctness of the trial court's ruling, not its reasoning. (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1451 [125 Cal.Rptr.2d 277] (*Whyte*).) This principle is particularly applicable to rulings granting or denying preliminary injunctions. As this court explained in *City of Los Altos v. Barnes* (1992) 3 Cal.App.4th 1193 [5 Cal.Rptr.2d 77], a hearing on a preliminary injunction is not a " ' "trial of a question of fact" ' " within the meaning of section 632, so no statement of decision is required, even on request. (*City of Los Altos*, at p. 1198, italics omitted; cf. *People v. Landlords Professional Services, Inc.* (1986) 178 Cal.App.3d 68, 72 [223 Cal.Rptr. 483].) Were we to review the court's oral statements, we would, in essence, compel the trial court to prepare a statement of decision explaining its ruling on injunctive relief. (*Whyte, supra*, 101 Cal.App.4th at p. 1451.) A trial court's oral statements may not be used to impeach its later decision. (*Ibid.*) So we will not consider the trial court's remarks.

"Whether the trial court granted or denied a preliminary injunction, the appellate court does not resolve conflicts in the evidence, reweigh the evidence, or assess the credibility of witnesses. [Citation.] ' "[T]he trial court is the judge of the credibility of the affidavits filed in support of the application for preliminary injunction and it is that court's province to resolve conflicts." ' [Citation.] Thus, even when presented by declaration, 'if the evidence on the application is in conflict, we must interpret the facts in the light most favorable to the prevailing party and indulge in all reasonable inferences in support of the trial court's order.' [Citation.]" (*Whyte, supra*, 101 Cal.App.4th 1443, 1450.)

### IV. PLAINTIFF'S LIKELIHOOD OF PREVAILING ON THE MERITS

#### A. *Plaintiff's Declaration*

Defendant repeatedly characterizes plaintiff's declaration that he molested her for years as "self-serving," as though that somehow reduces its worth.

"A self-serving declaration, of course, is an extrajudicial statement made by a person for his own benefit or in his own interests." (*Weber v. Leuschner* (1966) 240 Cal.App.2d 829, 840 [50 Cal.Rptr. 86].)

shall not be considered to be a determination on the merits of the claim or any defense thereto and shall not be given in evidence or referred to at the trial." (Italics added.)

Volume 2 McCormick, Evidence (6th ed. 2010) Hearsay, section 270, page 248 states: "The notion that parties' out-of-court statements could not be evidence in their favor because of the 'self-serving' nature of the statements seems to have originated with the now universally discarded rule forbidding parties to testify. When this rule of disqualification for interest was abrogated by statute, any sweeping rule of inadmissibility regarding self-serving statements should have been regarded as abolished by implication. [¶] The hearsay rule excludes all hearsay statements unless they fall within some exception to the rule. Thus, no specific rule is necessary to exclude self-serving out-of-court statements if not within a hearsay exception. If a statement with a self-serving aspect falls within an exception to the hearsay rule, the judgment underlying the exception that the assurances of trustworthiness outweigh the dangers inherent in hearsay should be taken as controlling, and the declaration should be admitted despite its self-serving aspects." (Fns. omitted.)

Modern courts have recognized that all evidence proffered by a party is intended to be self-serving in the sense of supporting the party's position, and it cannot be discounted on that basis. (*Jutzi v. County of Los Angeles* (1987) 196 Cal.App.3d 637, 653 [242 Cal.Rptr. 74], criticized on another ground by *Zavala v. Board of Trustees* (1993) 16 Cal.App.4th 1755, 1762 [20 Cal.Rptr.2d 768]; *Gillette v. Workmen's Comp. Appeals Bd.* (1971) 20 Cal.App.3d 312, 321 [97 Cal.Rptr. 542]; cf. *Whitlow v. Durst* (1942) 20 Cal.2d 523, 524 [127 P.2d 530] [declarations of a decedent's intent "are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving"].)

██ In general, "declarations constitute hearsay and are inadmissible at trial, subject to specific statutory exceptions, unless the parties stipulate to the admission of the declarations or fail to enter a hearsay objection. (Evid. Code, § 1200; [citations].)" (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1354 [63 Cal.Rptr.3d 483, 163 P.3d 160].) "The law provides specific exceptions to the general rule excluding hearsay evidence (see, e.g., Evid. Code, § 1220 et seq.), including those governing the admission of affidavits or declarations." (*Id.* at p. 1355.) One "statutory exception to the hearsay rule permits courts to rely upon affidavits in certain motion matters. (Code Civ. Proc., § 2009.)" (*Ibid.*, fn. omitted.)

██ Section 527, subdivision (a), provides in part: "A preliminary injunction may be granted at any time before judgment upon a verified complaint, or upon affidavits if the complaint in the one case, or the affidavits in the other, show satisfactorily that sufficient grounds exist therefor." A declaration under penalty of perjury has the same legal weight as an affidavit. (§ 2015.5.)

Plaintiff's declaration, though brief, was admissible at a motion hearing under an exception to the hearsay rule. It tended to establish that defendant

repeatedly molested plaintiff sexually while she was a child and that this resulted in her obtaining medical treatment for anxiety, depression, and eating disorders. The credibility of this declaration was for the trial court to evaluate. By itself it provides substantial evidence that plaintiff is likely to prevail at trial if similar testimony is believed by the fact finder.

B. *Significance of Defendant's No Contest Pleas*

Part of the evidence produced by plaintiff was that, in April 2010, defendant pleaded no contest to one felony count of lewd contact with a child under the age of 14 (count 2; Pen. Code, § 288, subd. (a)) and two felony counts of lewd touching of a child who was 14 or 15 years old and 10 years younger than the defendant (counts 4, 7; Pen. Code, § 288, subd. (c)(1)). Defendant correctly contends that this evidence alone is not conclusive of his conduct.

■ *Teitelbaum Furs, Inc. v. Dominion Ins. Co.* (1962) 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439] explained: "A plea of guilty is admissible in a subsequent civil action on the independent ground that it is an admission. It would not serve the policy underlying collateral estoppel, however, to make such a plea conclusive. 'The rule is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy.' [Citation.] 'This policy must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which fully to present his case.' [Citation.] When a plea of guilty has been entered in the prior action, no issues have been 'drawn into controversy' by a 'full presentation' of the case. It may reflect only a compromise or a belief that paying a fine is more advantageous than litigation. Considerations of fairness to civil litigants and regard for the expeditious administration of criminal justice [citation] combine to prohibit the application of collateral estoppel against a party who, having pleaded guilty to a criminal charge, seeks for the first time to litigate his cause in a civil action." (*Id.* at pp. 605–606.)

■ Penal Code section 1016, subdivision 3 provides that pleas of no contest or nolo contendere to felony charges have the same effect as guilty pleas. "The legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes. In cases other than those punishable as felonies, the plea and any admissions required by the court during any inquiry it makes as to the voluntariness of, and factual basis for, the plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based." (*Ibid.*)

"Because a felony guilty plea is admissible as a party admission in a subsequent civil action arising out of the same offense, so too is a felony nolo contendere plea. The plea is not conclusive evidence; it is merely evidence against the party and the party may contest the truth of the matters admitted by his plea and explain why he entered the plea." (*Rusheen v. Drews* (2002) 99 Cal.App.4th 279, 284 [120 Cal.Rptr.2d 769], fn. omitted.)

While defendant's no contest pleas are not conclusive, they are admissible as party admissions and, in the absence of an explanation for entering the pleas, they are highly corroborative of what defendant calls plaintiff's "unsupported self-serving statement in her declaration." Defendant's counsel's speculations about why a defendant might enter a no contest plea do not explain what happened in defendant's case. We conclude that the pleas provide support for plaintiff's declaration.

### C. *Defendant's Privilege Against Self-incrimination*

In opposition to the request for a preliminary injunction, defendant's attorney invoked defendant's privilege against self-incrimination. On appeal, he renews the contention that it violates due process for plaintiff to obtain an injunction "based on multiple accusations that [defendant] was not in a legal posture to be able [to] directly address the court with the truth."[5]

*Spielbauer v. County of Santa Clara* (2009) 45 Cal.4th 704 [88 Cal.Rptr.3d 590, 199 P.3d 1125] explained: "The Fifth Amendment to the United States Constitution declares that '[n]o person . . . shall be compelled *in any criminal case* to be a witness against himself . . . .' (Italics added.) The California Constitution similarly provides that '[p]ersons may not . . . be compelled *in a criminal cause* to be a witness against themselves . . . .' (Cal. Const., art. I, § 15, italics added.)

"The constitutional guarantee against compelled self-incrimination protects an individual from being forced to testify against himself or herself in a pending criminal proceeding, but it does more than that. It also privileges a person not to answer official questions in any other proceeding, 'civil or criminal, formal or informal,' where he or she reasonably believes the answers might incriminate him or her in a criminal case. [Citations.]" (*Spielbauer v. County of Santa Clara, supra,* 45 Cal.4th at p. 714.)

*Fuller v. Superior Court* (2001) 87 Cal.App.4th 299, 305 [104 Cal.Rptr.2d 525], more specifically explained how the privilege against self-incrimination

---

[5] This contention, complete with a typographical error, is among the large parts of defendant's opening brief (pts. VI, VII, and VIII) that were taken virtually verbatim from defendant's memorandum in opposition to plaintiff's requests, with the substitutions of "Appellant" for "Defendant" and "Respondent" for "Plaintiff."

has been applied to discovery requests in civil cases. "Code of Civil Procedure section 2017 allows discovery into 'any matter, not privileged, that is relevant to the subject matter involved in the pending action.' (Code Civ. Proc., § 2017, subd. (a).) Evidence Code section 940 excludes from discovery information which may tend to incriminate a party. (*Pacers, Inc. v. Superior Court* (1984) 162 Cal.App.3d 686, 688 [208 Cal.Rptr. 743].) This principle has been construed to allow assertion of the privilege against self-incrimination ' "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory . . . ." [Citations.]' (*Ibid.*) Privileged matters thus lie beyond the reach of discovery and trial courts may not compel individuals to make responses that they reasonably believe could tend to incriminate them or subject them to criminal prosecution. [Citations.]

█ "However, a party is not entitled to decide for himself or herself whether the privilege against self-incrimination may be invoked. ' "Rather, this question is for the court to decide after conducting '*a particularized inquiry, deciding, in connection with each specific area that the questioning party seeks to explore,* whether or not the privilege is well founded.' [Citation.]" [Citations.]' (*Warford v. Medeiros* (1984) 160 Cal.App.3d 1035, 1045 [207 Cal.Rptr. 94] [involving nonparty's right to invoke privilege against self-incrimination], [original] italics . . . .) This principle applies in both civil and criminal proceedings, and under both the federal and state Constitutions. (*Warford v. Medeiros, supra,* 160 Cal.App.3d at p. 1045; *Blackburn v. Superior Court* (1993) 21 Cal.App.4th 414, 428 [27 Cal.Rptr.2d 204]; *Alvarez v. Sanchez* (1984) 158 Cal.App.3d 709, 712 [204 Cal.Rptr. 864].) Only after the party claiming the privilege objects with specificity to the information sought can the court make a determination about whether the privilege may be invoked. (*Blackburn v. Superior Court, supra,* 21 Cal.App.4th 414.)" (*Fuller v. Superior Court, supra,* 87 Cal.App.4th at p. 305, fn. omitted.)

*Blackburn v. Superior Court, supra,* 21 Cal.App.4th 414 (*Blackburn*) is factually most similar to our case, as it involved a civil action alleging that the plaintiff's stepfather had molested her for five years until she turned 18. (*Id.* at p. 420.) The defendant stepfather refused to answer most questions at his deposition and sought a protective order based on his privilege against self-incrimination. (*Ibid.*) The denial of this protective order was brought up for writ review.

In *Blackburn*, there was no criminal prosecution and a prosecutor had rejected a request for immunity on the basis that the statute of limitations for the crime of molestation had expired. (*Blackburn, supra,* 21 Cal.App.4th 414, 421.) The defendant, however, remained concerned that an exception extending the limitations period might apply. (*Id.* at pp. 421–422, 426.) The

defendant complained of the dilemma of either providing possibly incriminatory answers or losing his civil case. (*Id.* at p. 425.)

██ The appellate court responded: "Blackburn's argument seems to be based on the premise that the Fifth Amendment privilege protects him from being subject to civil penalties. While accommodation in this regard is sometimes made to a defendant in a civil action, it is done from the standpoint of fairness, not from any constitutional right. (*People* v. *Coleman* (1975) 13 Cal.3d 867, 885 [120 Cal.Rptr. 384, 533 P.2d 1024].) The self-incrimination privilege is not applicable to matters that will subject a witness to civil liability. (*Warford* v. *Medeiros*[, *supra*,] 160 Cal.App.3d 1035, 1039; [citation].) ' "There may be cases where the requirement that a criminal defendant participate in a civil action, at peril of being denied some portion of his worldly goods, violates concepts of elementary fairness in view of the defendant's position in an inter-related criminal prosecution. On the other hand, the fact that a man is indicted cannot give him a blank check to block all civil litigation on the same or related underlying subject matter. Justice is meted out in both civil and criminal litigation. . . . The court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side." ' (*People* v. *Coleman, supra*, 13 Cal.3d at p. 885 . . . .)

"Whereas the Fifth Amendment privilege may be invoked by a civil litigant [citation], it does not provide for protection against civil penalties. '[W]hile the privilege of a criminal defendant is absolute, in a civil case a witness or party may be required either to waive the privilege or accept the civil consequences of silence if he or she does exercise it.' (*Alvarez* v. *Sanchez, supra*, 158 Cal.App.3d at p. 712.)" (*Blackburn, supra*, 21 Cal.App.4th 414, 425–426, fn. omitted.)[6]

---

[6] Plaintiff relies on the following passage in this court's opinion in *Avant! Corp.* v. *Superior Court* (2000) 79 Cal.App.4th 876 [94 Cal.Rptr.2d 505]. " '[A] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege. Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding.' " (*Id.* at pp. 885–886, quoting *Keating* v. *Office of Thrift Supervision* (9th Cir. 1995) 45 F.3d 322, 326.) At issue in that case was the extent to which civil discovery could be conducted against a corporation when some discovery requests were met by corporate employees invoking the privilege against self-incrimination. (*Avant! Corp.*, at p. 886.) We consider it less relevant than the authorities quoted in the text.

After that decision, the California Supreme Court relied on Evidence Code section 913 in overruling authority allowing adverse inferences to be drawn when the privilege is invoked in a civil proceeding. (*People v. Holloway* (2004) 33 Cal.4th 96, 131 [14 Cal.Rptr.3d 212, 91 P.3d 164].)

A defendant may not bring a civil action to a halt simply by invoking the privilege against self-incrimination. (*Fisher v. Gibson* (2001) 90 Cal.App.4th 275, 285 [109 Cal.Rptr.2d 145] [party opposing summary adjudication failed to make a showing that facts necessary to oppose the motion might exist, but could not then be presented due to a proper invocation of the privilege].) We understand defendant's desire to remain silent in the face of ongoing criminal proceedings rather than filing his own declaration in opposition to plaintiff's request for a preliminary injunction. However, defendant remained free to present other evidence to contradict plaintiff's declaration of molestation. Other declarants could have provided him with an alibi or otherwise contradicted plaintiff's claims without waiving defendant's privilege against self-incrimination. We see no deprivation of due process in the trial court considering the existing evidence and ruling on the request for a preliminary injunction. Defendant could have, and did, present evidence in opposition, which we will consider next.

### D. *Defendant's Opposition*

Defendant's opposition in the trial court was generally aimed at casting doubt on plaintiff's credibility.

Defendant's request for judicial notice attached a complaint for declaratory relief filed in the Santa Clara County Superior Court on February 13, 1992, and excerpts of a memorandum in that case opposing a summary judgment motion. According to defendant, these documents indicate that plaintiff's parents, on her behalf, sought damages for plaintiff being sexually molested by her babysitter's son when she was three years old.

A court may take judicial notice that pleadings were filed containing certain allegations and arguments (Evid. Code, § 452, subd. (d) [court records subject to permissive judicial notice]), but a court may not take judicial notice of the truth of the facts alleged. (*Day v. Sharp* (1975) 50 Cal.App.3d 904, 914 [123 Cal.Rptr. 918]; *Garcia v. Sterling* (1985) 176 Cal.App.3d 17, 22 [221 Cal.Rptr. 349]; *Espinoza v. Calva* (2008) 169 Cal.App.4th 1393, 1396 [87 Cal.Rptr.3d 492].) Even disregarding these limitations and assuming for the sake of discussion that plaintiff was molested as a child, it does not preclude the possibility that she was subsequently molested as a teenager.

Defendant also points out that this tort action was filed just five weeks after defendant's no contest pleas. He asserts that this "should be viewed with extreme suspicion and an indication of a pattern and scheme of [plaintiff's] to make false claims . . . for the self-serving purpose of financial gains." (Italics omitted.) We can imagine less sinister reasons for this timing. It minimized defendant's self-incrimination problems in the civil action to await resolution

of his criminal action. It would also facilitate proof of plaintiff's tort claims to have defendant's admission of felonious conduct. Although crime victims may recover restitution of economic losses in a criminal action (Pen. Code, § 1202.4, subds. (a), (f)) and victims of felony violations of Penal Code section 288 may recover "[n]oneconomic losses, including, but not limited to, psychological harm" (Pen. Code, § 1202.4, subd. (f)(3)(F)), punitive damages are not available as victim restitution. The timing of the civil action did not require the trial court to draw an inference adverse to plaintiff's credibility.

Defendant claims to have produced evidence "in complete contradiction" to plaintiff's declaration that she has suffered depression, anxiety, and eating disorders as a result of defendant's molestation. One item of this evidence is what defendant characterizes as "an analysis by a psychiatrist with certification in child and adolescent psychiatry." Defendant does not point out any contradiction between the psychiatrist's letter, dated October 23, 2007, and plaintiff's declaration, and we see none. The psychiatrist's letter explained a medical insurer's denial of reimbursement for one week of residential eating disorder treatment at Oceanaire Residential Treatment Program in August 2007 as not medically necessary. The letter accepted the premise that plaintiff was admitted for residential treatment on July 10, 2007, due to a "sudden onset of anoxeria nervosa." The psychiatrist did not dispute this diagnosis and did not attempt to identify the cause or causes of this disorder. His opinion was that plaintiff needed a higher level of care than the residential facility provided, as she was not gaining weight in that facility. Contrary to defendant's characterization, nothing about this letter casts doubt on the veracity of plaintiff's declaration.

Finally, defense counsel quoted excerpts from what he claimed was plaintiff's personal diary while in residential treatment in 2007 "which show that her claims of suffering emotional distress and eating disorders is [*sic*] not the result of any actions by the Defendant." Without further invading plaintiff's privacy by quotations, we summarize these excerpts as plaintiff holding her mother and her swim coach responsible for her eating disorder. Defendant claims that there is no reference to claims of abuse by him. He overlooks an entry from "Day 1" that includes "Friends dad??" on what appears to be a list of stressors or negative influences.

Considering that plaintiff has alleged the molestation to have continued until April 2009, we are not surprised that it was not disclosed in a 2007 diary. The date of disclosure has not been alleged. At most, the diary indicates that plaintiff's eating and emotional disorders may have more than one cause. That defendant might have taken advantage of an already troubled youth does not negate his responsibility for the consequences of his own conduct. The diary entries do not compel disbelief of plaintiff's declaration.

## V. BALANCING POTENTIAL HARMS

### A. *Potential Harm to Defendant from Issuing Injunction*

Defendant contends that any balancing of the equities leans heavily in his favor. Defendant argues that the injunction requested "to have his entire personal financial life taken away without a trial." As plaintiff points out, this argument is unsupported by any declaration by defendant citing a single contemplated financial transaction that has been prevented. Defendant has not explained what financial activities he intends to pursue while serving a six-year prison sentence. The order allows him to engage in financial activities in the normal course of business and for the necessities of life. Defendant has not presented evidence of any adverse consequence that he is likely to suffer by obeying the injunction.

### B. *Potential Injury to Plaintiff from Denying Injunction*

Defendant also contends that plaintiff failed to establish the harm or possible injury to her that a preliminary injunction would avoid.

We note that, while an injunction in this case serves some of the purposes of an attachment, it was sought and obtained under the Uniform Fraudulent Transfer Act (UFTA) (Civ. Code, § 3439 et seq.), not the Attachment Law.[7] The UFTA provides that "(a) In an action for relief against a transfer or obligation under this chapter, a creditor . . . may obtain: [¶] . . . [¶] (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure, the following: [¶] (A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or its proceeds." (Civ. Code, § 3439.07.) " 'Creditor' means a person who has a claim . . . ." (Civ. Code, § 3439.01, subd. (c).) " 'Claim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." (*Id.*, subd. (b).)

 "Certainly, for purposes of the Uniform Fraudulent Conveyance Act, a tort claimant before judgment is rendered is a 'creditor' within the meaning of Civil Code section 3439.01." (*Estate of Blanco* (1978) 86 Cal.App.3d 826, 832 [150 Cal.Rptr. 645].) "It is well settled in this state that the relationship

---

[7] The Attachment Law does not authorize attachment for tort claims. (See *Baker v. Superior Court* (1983) 150 Cal.App.3d 140, 146–147 [197 Cal.Rptr. 480].) The Attachment Law (§ 482.010 et seq.) authorizes a pretrial attachment of a defendant's assets "only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount." (§ 483.010, subd. (a).)

of debtor and creditor arises in tort cases the moment the cause of action accrues." (*Hansen v. Cramer* (1952) 39 Cal.2d 321, 323 [245 P.2d 1059].) " '[O]ne having a claim for a tort is a creditor before the commencement of an action thereon, as well as after, and, as such creditor, is, upon recovering judgment, entitled to avoid a fraudulent transfer antedating the commencement of his action.' " (*Chalmers v. Sheehy* (1901) 132 Cal. 459, 465 [64 P. 709].)

Defendant asserts that he does not meet the definition of a "debtor" in Civil Code section 3429. That definition is irrelevant, as the UFTA provides its own broader definition. " 'Debtor' means a person who is liable on a claim." (Civ. Code, § 3439.01, subd. (e).)

The UFTA includes an elaborate description of when a transfer is fraudulent. (Civ. Code, § 3439.04.)[8] For our purposes, it is a transfer made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." (*Id.*, subd. (a)(1).)

---

[8] Civil Code section 3439.04 states in part: "(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

"(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

"(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

"(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

"(B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

"(b) In determining actual intent under paragraph (1) of subdivision (a), consideration may be given, among other factors, to any or all of the following:

"(1) Whether the transfer or obligation was to an insider.

"(2) Whether the debtor retained possession or control of the property transferred after the transfer.

"(3) Whether the transfer or obligation was disclosed or concealed.

"(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

"(5) Whether the transfer was of substantially all the debtor's assets.

"(6) Whether the debtor absconded.

"(7) Whether the debtor removed or concealed assets.

"(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

"(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

"(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

"(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor."

Defendant relies on the following passage in *Mehrtash v. Mehrtash* (2001) 93 Cal.App.4th 75 [112 Cal.Rptr.2d 802] (*Mehrtash*). "A well-established principle of the law of fraudulent transfers is, 'A transfer in fraud of creditors may be attacked only by one who is injured thereby. Mere intent to delay or defraud is not sufficient; injury to the creditor must be shown affirmatively. In other words, prejudice to the plaintiff is essential. It cannot be said that a creditor has been injured unless the transfer puts beyond [her] reach property [she] otherwise would be able to subject to the payment of [her] debt.' " (*Id.* at p. 80.)

Defendant asserts that plaintiff "presented no evidence of possible injury by way of the Santa Clara transfer by [defendant]." (Italics omitted.) As plaintiff points out, *Mehrtash* is distinguishable. The issue in that case was not whether the plaintiff was entitled to an injunction, but whether she had presented evidence during a court trial justifying the court setting aside a quitclaim deed of real property from the defendant to his two adult sons. The plaintiff was the defendant's ex-wife, who was seeking spousal support. (*Mehrtash, supra*, 93 Cal.App.4th at p. 77.) The plaintiff's problem was that the realty was so heavily encumbered as to have no value as an asset. "Plaintiff produced no evidence that the value of the property could support any net recovery for her in the event the conveyance were set aside." (*Id.* at p. 81.) On appeal, the plaintiff did not claim that "she was injured financially by the allegedly fraudulent conveyance . . . ." (*Ibid.*)

█ *Mehrtash* does not purport to establish an evidentiary threshold for obtaining a preliminary injunction. "Plaintiffs are not required to wait until they suffer actual harm, but may seek injunctive relief against threatened infringement of their rights." (*Southern Christian Leadership Conference v. Al Malaikah Auditorium Co.* (1991) 230 Cal.App.3d 207, 223 [281 Cal.Rptr. 216], criticized on another ground by *Triplett v. Farmers Ins. Exchange* (1994) 24 Cal.App.4th 1415, 1422–1423 [29 Cal.Rptr.2d 741].) When a preliminary injunction is requested, "[t]he trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction." (*Butt v. State of California* (1992) 4 Cal.4th 668, 678 [15 Cal.Rptr.2d 480, 842 P.2d 1240].) █ As plaintiff says, the purpose of a preliminary injunction under the UFTA is to prevent "further disposition by the debtor or a transferee, or both, of the asset transferred" (Civ. Code, § 3439.07, subd. (a)(3)(A)), not to set aside a completed transfer.

█ The timing of defendant's conveyance of his personal residence to a trust after he was arrested on charges of molestation may be indicative of an

intent to protect his assets against creditors. We conclude that this was sufficient evidence of potential injury to plaintiff to warrant a preliminary injunction under the UFTA restricting defendant's further disposition of his assets. We further conclude that defendant has failed to establish that the trial court abused its discretion in issuing the preliminary injunction that it did.

## VI. THE DISCOVERY ORDER

Defendant's opening brief has seven captioned arguments. No caption is directed at that part of the July 19, 2010 order requiring defendant to document the value of his assets by producing financial statements. However, without a separate heading as required by California Rules of Court, rule 8.204(a)(1)(B),[9] the opening brief does contain two paragraphs requesting reversal of the early discovery order because it was based partly on the no contest plea and partly on the transfer of property into trust.

■ As plaintiff points out, generally discovery rulings are not directly appealable and are subject to review only after entry of a final judgment. (*Southern Pacific Co. v. Oppenheimer* (1960) 54 Cal.2d 784, 785–786 [8 Cal.Rptr. 657, 356 P.2d 441]; *Johnson v. Alameda County Medical Center* (2012) 205 Cal.App.4th 521, 531 [140 Cal.Rptr.3d 281].)

■ An order granting an injunction is appealable. (§ 904.1, subd. (a)(6).) ■ In an authorized appeal, an appellate court may review "any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from." (§ 906.) As plaintiff contends, the discovery order here, though made in the same order as the issuance of an injunction, is unrelated to the merits of the injunction and does not necessarily affect it. Defendant does not respond to this contention. Accordingly, we do not reach the merits of defendant's attacks on the discovery order. (Cf. *NewLife Sciences v. Weinstock* (2011) 197 Cal.App.4th 676, 689 [128 Cal.Rptr.3d 538].) They repeat contentions that we have rejected in connection with the preliminary injunction.

## VII. THE AMOUNT OF THE BOND FOR THE INJUNCTION

Defendant also contends that the injunction should be reversed due to the inadequacy of the $1,000 bond. In opposition to plaintiff's request for an injunction, defendant asserted, "Since the only number that the moving

---

[9] Unspecified rule references are to the California Rules of Court.

papers indicate is a purported $1,000,000.00 in medical expenses claim, this amount would be an appropriate amount for a bond." At the hearing on July 8, 2010, defendant argued that $1,000 was "totally insufficient."

Section 529, subdivision (a) states: "On granting an injunction, the court or judge must require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction. Within five days after the service of the injunction, the person enjoined may object to the undertaking. If the court determines that the applicant's undertaking is insufficient and a sufficient undertaking is not filed within the time required by statute, the order granting the injunction must be dissolved."

An order setting the amount of the bond is not independently appealable (*County of Los Angeles v. City of Los Angeles* (1999) 76 Cal.App.4th 1025, 1028 [90 Cal.Rptr.2d 799]), but it may be reviewed on appeal from the issuance of the injunction.

" '[T]he trial court's function is to estimate the harmful effect which the injunction is likely to have on the restrained party and to set the undertaking at that sum.' " (*White v. Davis* (2003) 30 Cal.4th 528, 551 [133 Cal.Rptr.2d 648, 68 P.3d 74], quoting *ABBA Rubber Co. v. Seaquist* (1991) 235 Cal.App.3d 1, 14 [286 Cal.Rptr. 518] (*ABBA Rubber Co.*).)

"The amount of the bond is fixed by the judge, exercising sound discretion, based on the probable damage that the enjoined party may sustain because of the injunction. [Citations.] This court cannot substitute its own view as to the proper amount of bond, but rather will disturb the trial court's exercise of discretion only if it clearly appears to be arbitrary or capricious and exceeds the bounds of reason." (*Greenly v. Cooper* (1978) 77 Cal.App.3d 382, 390 [143 Cal.Rptr. 514].)

Defendant reiterates his claim that the bond should be in as high an amount as the medical special damages alleged by the plaintiff. This claim is inconsistent with the authority on which he relies. *ABBA Rubber Co.* stated: "In reviewing the trial court's estimation, the first step is to identify the types of damages which the law allows a restrained party to recover in the event that the issuance of the injunction is determined to have been unjustified. The sole limit imposed by the statute is that the harm must have been proximately

caused by the wrongfully issued injunction. (§ 529, subd. (a).) Case law adds only the limitation that the damages be reasonably foreseeable." (*ABBA Rubber Co., supra*, 235 Cal.App.3d 1, 14.) A determination after trial of the amount of damage done by defendant is not the kind of "damage" contemplated by section 529, subdivision (a), as proximately caused by the wrongful issuance of an injunction.

The kind of damage that could result from the wrongful issuance of an injunction, as *ABBA Rubber Co.* pointed out, is that portion of the defendant's attorney fees that was devoted to demonstrating that the injunction was wrongfully issued. (*ABBA Rubber Co., supra*, 235 Cal.App.3d at pp. 15–16; *Lambert v. Haskell* (1889) 80 Cal. 611, 624–625 [22 P. 327]; *Mason v. U.S. Fid. & Guar. Co.* (1943) 60 Cal.App.2d 587, 593–594 [141 P.2d 475].)

 *ABBA Rubber Co.* further reasoned that the likelihood of the plaintiff prevailing at trial is irrelevant to a determination of the defendant's likely damages, because no preliminary injunction will issue without a finding of the plaintiff's likelihood of prevailing. (*ABBA Rubber Co., supra*, 235 Cal.App.3d 1, 16, fn. 8.) We cannot subscribe to this reasoning. The greater the likelihood of the plaintiff prevailing, the less likely a preliminary injunction will have been found to be wrongfully issued. That factor may not be controlling of the amount of the bond, but we consider it relevant.

Defendant made no evidentiary showing of his likely damages in the event the preliminary injunction is later determined to have been wrongfully issued. He has not established that the trial court abused its discretion in granting the injunction. We conclude that he has not demonstrated an abuse of discretion in setting a fairly nominal bond amount of $1,000. Defendant remains free to seek an increase in the amount of the bond if he can demonstrate "that the amount of [his] damages may exceed the bond." (*Greenly v. Cooper, supra*, 77 Cal.App.3d 382, 390.)

## VIII. THE SEALING ORDER

By separate appeal, defendant challenges the September 28, 2010 order that sealed the June 25, 2010 declaration by defense counsel and exhibits attached to the declaration in opposition to the request for a preliminary injunction. It also ordered defendant not to file "any additional medical or personal records of Plaintiff in this action unless prior approval is obtained from the court."

This order resulted from an ex parte application by plaintiff filed on Friday, September 24, 2010. The application acknowledged that "52 pages excerpted from Plaintiff's personal treatment journal kept during the course of her residential treatment" were attached to defense counsel's declaration. The application also asserted, "Plaintiff does not know how Defendant obtained her personal medical treatment records and whether these records were obtained in violation of HIPAA." "Plaintiff has an overriding interest in the privacy of her medical records. She does not want information about her medical condition or her personal diary entries to be freely available for public viewing. . . . Plaintiff will suffer embarrassment and distress at having her medical treatment records, and personal diary entries discussing that medical treatment, available to any member of the public." The application included a declaration of plaintiff's counsel attaching prior correspondence asking defense counsel to withdraw his declaration or file it under seal. Defense counsel's letter response was that he might agree to seal his declaration if plaintiff agreed to seal the court plea minutes attached to the complaint.

A hearing was apparently already scheduled for September 28, 2010, to consider defendant's demurrer, and the ex parte application was also addressed at that hearing. Defendant filed no written opposition to the ex parte application and did not orally oppose the request at the hearing or request additional time to file opposition.

At the hearing on September 28, 2010, defense counsel acknowledged having received the proposed order and made two comments. One was that "it makes the public file one-sided, everything is barring the defendant, everything they have is sealed." The other was that defense counsel wanted to determine how to obtain advance court approval before filing additional documents. The court indicated its availability every day. The court indicated that the proposed order was okay. After the hearing, defendant did not file a request for reconsideration (§ 1008) or apply to have the documents unsealed.

On appeal, defendant now asserts that plaintiff's evidentiary showing was inadequate to justify the sealing order and that the court did not make the factual findings required by the California Rules of Court.

### A. *Appealability of the Sealing Order*

Plaintiff contends that the sealing order is not appealable. In *Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60 [70 Cal.Rptr.3d 88] (*Mercury Interactive Corp.*), cited by neither side, this court stated, "Plainly,

an order concerning the sealing of court records is not made expressly appealable under Code of Civil Procedure section 904.1." (*Id.* at p. 76.) Nevertheless, "[t]he collateral order exception has been applied in at least four cases involving appellate review of orders concerning the sealing of court records." (*Ibid.*) The opinion proceeded to analyze *Gilbert v. National Enquirer, Inc.* (1996) 43 Cal.App.4th 1135, 1148, footnote 3 [51 Cal.Rptr.2d 91], *In re Marriage of Lechowick* (1998) 65 Cal.App.4th 1406, 1410–1411 [77 Cal.Rptr.2d 395], *In re Providian Credit Card Cases* (2002) 96 Cal.App.4th 292, 297, footnote 2 [116 Cal.Rptr.2d 833] (*Providian*), and *In re Marriage of Burkle* (2006) 135 Cal.App.4th 1045, 1051, footnote 6 [37 Cal.Rptr.3d 805]. (*Mercury Interactive Corp., supra,* 158 Cal.App.4th at pp. 76–77.) We concluded that an order unsealing exhibits to a complaint was "appealable because it is a 'final determination of a collateral matter in that it directs the performance of an act—i.e., unsealing—against defendants.' " (*Id.* at p. 77, quoting *Providian.*)

Plaintiff distinguishes the cases cited by defendant, including *In re Marriage of Lechowick, supra,* 65 Cal.App.4th 1406 and *In re Marriage of Nicholas* (2010) 186 Cal.App.4th 1566 [113 Cal.Rptr.3d 629], on the basis that the orders were easier to regard as collateral because news agencies sought, as third party interveners, to unseal court records. The same can be said of this court's decision in *Mercury Interactive Corp.*

The same cannot be said of this court's decision in *H.B. Fuller Co. v. Doe* (2007) 151 Cal.App.4th 879 [60 Cal.Rptr.3d 501], on which defendant also relies. There we concluded that a sealing order, as a form of discovery order, was appealable "where the order is ancillary to litigation in another jurisdiction and operates as the last word by a California trial court on the matters at issue." (*Id.* at pp. 885–886.) In that unusual case, the anonymous defendant sought to unseal documents that the trial court had relied on in denying the defendant's motion to quash a subpoena. (*Id.* at p. 883.)[10]

We do not understand the above decisions to turn on whether an intervener has sought to seal or unseal records. We conclude that the sealing order here is appealable under the collateral order exception.

---

[10] That opinion provides limited guidance on this appeal's issues apart from appealability, as on the merits it was "not an appeal from the trial court's sealing order; it is a motion for this court to take certain actions with respect to its own records. We are not being asked to set aside, or take any other action in derogation of, the existing order. We are instead being asked to decide whether materials filed in *this* court should be and remain sealed, or whether they should be open, like most of our records, to public inspection." (*H.B. Fuller Co. v. Doe, supra,* 151 Cal.App.4th 879, 889.)

### B. *Forfeited Contentions*

■ Though the order is appealable, as plaintiff contends, the arguments available to defendant on appeal are limited by what he argued in the trial court. In *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 948–949 [90 Cal.Rptr.3d 247], this court stated: " 'In order to preserve an issue for appeal, a party ordinarily must raise the objection in the trial court.' [Citation.] 'The party also must cite to the record showing exactly where the objection was made.' [Citation.] As the California Supreme Court recently reaffirmed, 'a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court.' (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 [13 Cal.Rptr.3d 786, 90 P.3d 746].) 'The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected.' (*Ibid.*)"

Defendant contends that the trial court's order failed to make the factual findings required by rule 2.550(d), which states: "The court may order that a record be filed under seal only if it expressly finds facts that establish:

"(1) There exists an overriding interest that overcomes the right of public access to the record;

"(2) The overriding interest supports sealing the record;

"(3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed;

"(4) The proposed sealing is narrowly tailored; and

"(5) No less restrictive means exist to achieve the overriding interest."

Defendant acknowledges that the order filed includes the legal conclusions required by this rule, but asserts that the order does not state the facts underlying these conclusions.

Defendant has forfeited the objection that the trial court's factual findings did not conform to rule 2.550(d) by failing to make it in the trial court. (Cf. *Ladd v. Dart Equipment Corp.* (1991) 230 Cal.App.3d 1088, 1092, fn. 2 [281 Cal.Rptr. 813] [claim of noncompliance with Cal. Rules of Court forfeited]; *City of San Marcos v. Coast Waste Management, Inc.* (1996) 47 Cal.App.4th

320, 328 [54 Cal.Rptr.2d 588] [objection to form of order waived by failure to object to proposed order]; *Andrus v. Estrada* (1995) 39 Cal.App.4th 1030, 1043–1044 [46 Cal.Rptr.2d 300] [same].) As *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130 [275 Cal.Rptr. 797, 800 P.2d 1227] said of an objection that a statement of decision was unresponsive to a request for decision, "It is clearly unproductive to deprive a trial court of the opportunity to correct such a purported defect by allowing a litigant to raise the claimed error for the first time on appeal." (*Id.* at p. 1138.)

Defendant also asserts on appeal that the evidentiary showing in support of the application was deficient because "Plaintiff did not even submit a Declaration of her own but these claims [of embarrassment and distress] were merely conveyed by her counsel who lacks personal knowledge of such matter."

 The general rule is that "evidence which is admitted in the trial court without objection, although incompetent, should be considered in support of that court's action [citations], and objection may not be first raised at the appellate level." (*Estate of Fraysher* (1956) 47 Cal.2d 131, 135 [301 P.2d 848].) This rule applies when the objection pursuant to Evidence Code section 702 is that a declaration is not based on personal knowledge. (*Evers v. Cornelson* (1984) 163 Cal.App.3d 310, 315 [209 Cal.Rptr. 497].) The reasoning of *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717 [137 Cal.Rptr.3d 756] is applicable. "At no point before or during the hearing did [defendant] object to the emergency protective order application, or to [counsel's] declaration. Because [he] did not object, [he] has forfeited [his] claim that the court erred by admitting this evidence. To obtain reversal based on the erroneous admission of evidence, the record must show a timely objection making clear that specific ground. ([Evid. Code, ]§ 353; [citation].) Lack of such objection deprives the proponent of the evidence an opportunity to establish a better record or some alternative basis for admission." (*Id.* at p. 726.)

Defendant contends that he was unable to file formal opposition because plaintiff's motion was ex parte, just four days before the hearing, and he did not see the moving papers until the day of the hearing and that, in any event, he did object at the hearing. We have set out defense counsel's comments above. We do not understand them to be objections to the form of the proposed order or the competence of plaintiff's evidence. Assuming for the sake of discussion that the limited time excused defendant from filing formal opposition to the ex parte application, still he neither asserted any defects in plaintiff's showing or the proposed order, nor did he ask for a continuance to respond to the application, nor did he later ask for the documents to be unsealed on the grounds now stated on appeal. Under these circumstances, we deem these objections waived despite the short notice before the hearing.

(*Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697 [91 Cal.Rptr.2d 844]; *Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1288 [56 Cal.Rptr.3d 216].)

■ On the other hand, it is ultimately a question of law whether the evidence, interpreted according to applicable appellate principles, is sufficient to support a ruling (*Burtis v. Universal Pictures Co.* (1953) 40 Cal.2d 823, 831 [256 P.2d 933]; *Thom v. Stewart* (1912) 162 Cal. 413, 421 [122 P. 1069]), and the sufficiency of the evidence can be raised for the first time on appeal (cf. *People v. Butler* (2003) 31 Cal.4th 1119, 1126 [6 Cal.Rptr.3d 730, 79 P.3d 1036]). ■ Similarly, to the extent that an error of law appears on the face of the trial court's order, that issue of law may be raised for the first time on appeal. (*United Services Auto. Assn. v. Dalrymple* (1991) 232 Cal.App.3d 182, 186 [283 Cal.Rptr. 330] [statement of decision]; *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59 [58 Cal.Rptr.3d 225] [same].)

### C. *Standard of Review of Sealing Order*

In *McGuan v. Endovascular Technologies, Inc.* (2010) 182 Cal.App.4th 974, 988 [106 Cal.Rptr.3d 277], this court stated: "We review the trial court's decision to order the documents sealed under the abuse of discretion standard, and any factual determinations made in connection with that decision will be upheld if they are supported by substantial evidence. (*Providian*, at p. 299.)"

Defendant invokes *People v. Jackson* (2005) 128 Cal.App.4th 1009 [27 Cal.Rptr.3d 596] (*Jackson*) to argue that we should instead independently review the ruling. That court stated: "Here, the trial court did not take testimony. There is no credibility of witnesses to determine. It considered the court record that we review. In these circumstances, independent review is the equivalent of de novo review, the standard we use in deciding this appeal." (*Id.* at p. 1021.) *Jackson* involved a request to unseal "the grand jury transcript, the indictment, search warrant affidavits and other court records" in a criminal case charging Michael Jackson with child molestation. (*Id.* at p. 1014.) It does not appear that either the sealing or unsealing was based on declarations by the parties.

Plaintiff seeks to distinguish *Jackson* on the basis that it discussed conducting independent review because First Amendment rights were involved. (*Jackson, supra,* 128 Cal.App.4th 1009, 1021.) However, we understand the court's decision to conduct independent review to have been based on the state of the record, where no declarations were presented regarding the propriety of the sealing order, and not on the First Amendment. The same is true of the sealing order in this case. While plaintiff's counsel did submit a declaration, it was aimed at establishing the history of correspondence. The

declaration did not confirm counsel's argument about plaintiff's desire to have her medical records sealed. Accordingly, we will independently review the propriety of the sealing order.

### D. The Propriety of the Sealing Order

What the trial court ordered sealed were two letters pertaining to a medical coverage dispute between plaintiff and her health insurer and what the parties agree is a diary plaintiff kept in 2007 in the course of receiving medical treatment.

 Citing *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 41, 52 [26 Cal.Rptr.2d 834, 865 P.2d 633], and other authority, this court has recognized "that a person's medical history, including psychological records, falls within the zone of informational privacy protected" by the state and federal Constitutions. (*People v. Martinez* (2001) 88 Cal.App.4th 465, 474–475 [105 Cal.Rptr.2d 841]; cf. *Manela v. Superior Court* (2009) 177 Cal.App.4th 1139, 1150 [99 Cal.Rptr.3d 736].) California has enacted the Confidentiality of Medical Information Act. (Civ. Code, § 56 et seq.) "In general, this legislation, enacted in 1981, is intended to protect the confidentiality of individually identifiable medical information obtained from a patient by a health care provider, while at the same time setting forth limited circumstances in which the release of such information to specified entities or individuals is permissible." (*Loder v. City of Glendale* (1997) 14 Cal.4th 846, 859 [59 Cal.Rptr.2d 696, 927 P.2d 1200].) Communications between patients and their physicians and psychotherapists are presumed to be confidential. (Evid. Code, § 917.)

 Defendant does not dispute that plaintiff's medical records should ordinarily be considered private. However, defendant contends that plaintiff has waived her right of privacy by putting her medical condition in issue. A plaintiff is recognized as waiving physician-patient and psychotherapist-patient privileges to the extent he or she has put his or her medical or psychological condition in issue in a lawsuit. (Evid. Code, §§ 996, 1016; *In re Lifschutz* (1970) 2 Cal.3d 415, 435 [85 Cal.Rptr. 829, 467 P.2d 557].)

Defendant's claim of waiver is misdirected. A plaintiff who puts her medical condition in issue thereby waives her privilege against discovery of the medical information by the defendant. However, disclosure to an opponent in civil litigation does not necessarily waive the patient's privilege to keep the information from third parties, including the public. That is what the United States Supreme Court essentially decided in *Seattle Times Co. v. Rhinehart* (1984) 467 U.S. 20 [81 L.Ed.2d 17, 104 S.Ct. 2199] (*Rhinehart*). The issue in *Rhinehart* was "whether parties to civil litigation have a First

Amendment right to disseminate, in advance of trial, information gained through the pretrial discovery process." (*Id.* at p. 22.) The high court reviewed a protective order that precluded the defendants in a defamation action from publishing or disseminating information about the financial affairs of the plaintiffs. (*Id.* at p. 27.)

 The Supreme Court explained that civil discovery is not a public component of a trial. (*Rhinehart, supra,* 467 U.S. 20, 33.) It is not a classic prior restraint to prohibit dissemination of information gained in discovery. (*Id.* at pp. 33–34.) "[D]iscovery also may seriously implicate privacy interests of litigants and third parties." (*Id.* at p. 35, fn. omitted.) "There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes." (*Ibid.*) The court upheld the protective order precluding public dissemination of private information disclosed through civil discovery, finding that the Washington state rules for protective orders required "no heightened First Amendment scrutiny." (*Id.* at p. 36.) There was no question in that case whether the information was "gained through means independent of the court's processes." (*Id.* at p. 34.)[11]

California courts are similarly authorized to issue protective orders, for good cause shown, to protect any party or other person from "unwarranted annoyance, embarrassment, or oppression" in connection with civil discovery. (§§ 2023.010, subd. (c) [sanctions], 2030.090, subd. (b) [interrogatories], 2031.060, subd. (b) [inspection of documents and tangible things]; see §§ 2033.080, subd. (b) [requests for admission], 2034.250, subd. (b) [demand to exchange expert information]; *Mercury Interactive Corp., supra,* 158 Cal.App.4th 60, 106–107.)

 Plaintiff has proclaimed ignorance of how defense counsel obtained her medical records. *Rhinehart* indicates that private information not gained through the court's processes may be less subject to judicial control, but surely the courts are not powerless to prevent court files from becoming the conduits of disclosure of sensitive private information. The fact that the public is admitted into a courtroom does not make the courtroom or the courthouse a public forum where people may speak freely without governmental

---

[11] *Rhinehart* is understood as the genesis of the following exception to California's rules for sealing documents. "These rules do not apply to discovery motions and records filed or lodged in connection with discovery motions or proceedings. However, the rules do apply to discovery materials that are used at trial or submitted as a basis for adjudication of matters other than discovery motions or proceedings." (Rule 2.550(a)(3); see *Mercury Interactive Corp., supra,* 158 Cal.App.4th 60, 83–84, fn. 21; cf. *H.B. Fuller Co. v. Doe, supra,* 151 Cal.App.4th 879, 893.)

restriction. (*Mezibov v. Allen* (6th Cir. 2005) 411 F.3d 712, 718; *Braun v. Baldwin* (7th Cir. 2003) 346 F.3d 761, 763–764; *People v. Aleem* (Colo. 2007) 149 P.3d 765, 776.) The court's files and records are also subject to the court's control. Courts have inherent authority to strike scandalous and abusive statements in pleadings. (Cf. *Warner v. Warner* (1955) 135 Cal.App.2d 302, 304 [287 P.2d 174].) "The court may, upon a motion made pursuant to Section 435, or at any time in its discretion, and upon terms it deems proper: [¶] (a) Strike out any irrelevant, false, or improper matter inserted in any pleading. [¶] (b) Strike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court." (§ 436.) It is also "appropriate to seal certain records when those particular records contain highly sensitive and potentially embarrassing personal information about individuals." (*Jackson, supra*, 128 Cal.App.4th 1009, 1024.)

In this case, plaintiff's medical condition and treatment may eventually become a subject of testimony and documentary evidence at a public trial. However, we are not now confronted with a request to close the courtroom doors to trial spectators, as was the court in *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178 [86 Cal.Rptr.2d 778, 980 P.2d 337]. Instead, the issue before us is whether part of plaintiff's medical records should remain exposed to public view in a court file because defendant's counsel deemed them relevant to his opposition to a preliminary injunction long since granted. The sealing order does not prevent defendant from either discovering any relevant information about plaintiff's medical condition and treatment or producing these documents in evidence at trial. It simply prevents defendant from using the court files to publicize what he recognizes to be plaintiff's private medical records.

 We regard medical records as presumptively private, such that plaintiff was not required to state the obvious in a declaration, that she would be personally embarrassed to have her medical records copied into court records. The public, through its courts and legislatures, has recognized that medical records are constitutionally private and statutorily confidential. While "[p]rivacy concerns are not absolute [and] must be balanced against other important interests" (*Hill v. National Collegiate Athletic Assn., supra*, 7 Cal.4th 1, 37), we conclude that the public's general right of access to court records recognized in rule 2.550 must give way to the public's concern about the privacy of medical information in this case, particularly when the information appears so tangentially related to the litigation. It follows that the trial court did not abuse its discretion in reaching the same conclusion. As to defendant's complaint that the sealing order somehow renders the court records one-sided, there is no indication that defendant has requested an order sealing any of plaintiff's submissions.

## IX. DISPOSITION

The order of July 18, 2010 granting a preliminary injunction and setting the amount of the bond is affirmed. The order of September 28, 2010 sealing defense counsel's declaration of June 25, 2010 and attached exhibits is affirmed. Plaintiff is to recover costs on appeal.

Premo, J., and Elia, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 13, 2013, S208185.