Filed 2/2/22  Lund v. Lund CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BRADFORD D. LUND, | B309186 |
| Appellant, | |
| v. | (Los Angeles County Super. Ct. Nos. BP129814, BP055495, BP119204, BP119205, BP129815) |
| MICHELLE A. LUND et al, | |
| Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, David J. Cowan, Judge.  Affirmed.

Adkisson Pitet and Joseph P. Busch; Horne Slaton and Matthew Monaco for Appellant.

Mitchell Silberberg & Knupp, Hayward J. Kaiser, Andrew C. Spitser for Respondents.

Bradford Lund appeals from the denial of his motion to seal 11 documents filed in probate proceedings in the trial court. His appeal is the latest in the long-running dispute regarding several multi-million dollar trusts established for the benefit of appellant and his siblings, the grandchildren of Walt and Lillian Disney. Appellant filed five appeals, one for each trust at issue, from the court's order denying his motion to seal.[1]

Appellant argued below that the documents at issue contained medical information, as well as other sensitive details of his personal life, and therefore that his right to privacy required their sealing. He also urged the trial court to follow the decisions of an Arizona court, which had sealed several of the documents as part of separate proceedings there. In denying the motion to seal, the trial court concluded that while appellant had a right to privacy in his medical information, he had not established that his right overrode the presumption of public access to documents. In particular, the court found that appellant put his mental capacity at issue in the probate proceedings, allowed several of the exhibits to be publicly available for several years, and otherwise failed to meet any of the requirements for sealing the documents set forth in California Rules of Court, rule 2.550.[2] The court also found that appellant failed to provide sufficient evidence of the Arizona sealing orders. As a result, the court found those orders had no persuasive effect. We find no error in the trial court's decision and therefore affirm.

## FACTS AND PROCEDURAL BACKGROUND

This litigation encompasses five probate cases corresponding to the five trusts at issue. Respondents First Republic Trust Company (FRTC), L. Andrew Gifford, Robert Wilson, and Douglas Strode are co-trustees of two residuary trusts for the benefit of appellant and his twin sister, Michelle Lund.[3] FRTC is also the trustee for the Lillian B. Disney Trust fbo Bradford

---

[1] We granted appellant's motion consolidated the appeals for the purposes of briefing, argument, and disposition.

[2] All further rule references are to the California Rules of Court unless otherwise indicated.

[3] We refer to members of the Lund family by first name for clarity because they share a surname; no disrespect is intended.

D. Lund, and is the former trustee of two other trusts benefitting appellant (the 1992 trust and the 1986 trust).

The residuary trust established for appellant's benefit provided for distributions of 20 percent of the then-remaining principal balance when appellant reached ages 35, 40, and 45 (the birthday distributions). However, the trust further provided: "Notwithstanding the foregoing, the Trustees shall have the power to withhold any such distribution in the event that the Trustees, in their discretion, determine that the child has not theretofore demonstrated the maturity and financial ability to manage and utilize such funds in a prudent and responsible manner" (the discretionary withholding power). In June 2005, when appellant turned 35, the trustees unanimously exercised the discretionary withholding power to withhold appellant's 35th birthday distribution.[4]

I.  **Prior Proceedings**

A.  *Arizona Proceedings*

In 2006, appellant (then age 36) filed a guardianship petition in Arizona Superior Court seeking appointment of his father, William Lund; stepmother, Sherry Lund; Sherry's daughter, Rachel Schemitsch; and appellant's sister, Michelle, as his guardians (the 2006 Arizona proceeding). Appellant later withdrew this petition.

In 2009, appellant's aunt and two of his half-sisters filed a petition for appointment of a guardian and conservator over appellant in Arizona Superior Court (the 2009 Arizona proceeding). The Arizona court entered judgment in favor of appellant in 2016. The Arizona Court of Appeal affirmed the judgment. The appellate court opinion's summary of the facts from the trial in the 2009 Arizona proceeding included an admission by appellant that he had developmental disabilities, and a statement from a court-appointed neuropsychologist that appellant suffered "significant cognitive deterioration" from 2003 to 2011.

---

[4.]The trustees subsequently decided to withhold appellant's 40th and 45th birthday distributions when appellant reached the qualifying ages.

### B.   *California Proceedings*
#### 1.   *2013 trial and 2014 appeal*

Appellant (then age 40) initiated these trust proceedings in California in December 2010 when he filed a petition seeking to compel his 35th and 40th birthday distributions from his residuary trust and to remove the current trustees.  In July 2011, FRTC filed two petitions for instructions as trustee of the 1986 and 1992 trusts, related to appellant's purported attempt to remove it and appoint a new trustee.

The petitions on the various trusts were tried simultaneously in a bench trial before Judge Mitchell Beckloff in December 2013 (the 2013 trial). The court issued a final statement of decision on June 3, 2014, finding, as relevant here, that the trustees did not abuse their discretion in withholding appellant's 35th and 40th birthday distributions. The court found the trustees introduced "substantial evidence ... to support their position" that at the time of appellant's 40th birthday, he "did not have the maturity and financial ability to manage and utilize a substantial trust distribution." In particular, the court found it compelling that appellant himself contended he was significantly impaired when he filed the guardianship petition in the 2006 Arizona proceeding, and that these limitations were echoed in a declaration by appellant's treating physician at the time. In addition, the court cited evidence of ongoing concerns over appellant's "worsening" condition, as noted by William and other family members in 2009.

Appellant appealed from the probate court's 2014 statement of decision (the 2014 appeal).  We affirmed the trial court's ruling in our prior unpublished opinion, *First Republic Trust Company v. Lund* (Dec. 6, 2017, B258224) (nonpub. opn.) (*Lund I*).  In our discussion, we summarized key portions of the evidence adduced at trial related to the bases for the trustees' decisions to deny appellant's birthday distributions and the information known to the trustees at the time of those decisions.  We concluded that substantial evidence supported the trial court's determinations.  We also granted appellant's motion to seal two exhibits—referred to here as exhibits 14 and 118.

4

### 2. *OSC re GAL and potential settlement*

Litigation over the trusts continued.  In December 2018, the probate court issued orders to show cause (OSCs) as to whether it should (1) appoint a limited guardian ad litem (GAL) for appellant; and/or (2) remove or suspend Sherry and financial advisor James Dew as co-trustees of the 1992 Trust.  The parties filed responses to the OSCs.  Respondents filed an extensive set of supporting exhibits, including the documents at issue here.

On March 19, 2019, appellant filed a motion to seal multiple exhibits included in respondents' response to the OSCs.[5]  In the meantime, the parties, along with Michelle, reached a global settlement agreement on April 8, 2019.  The parties filed petitions for approval of the settlement agreement on April 30, 2019; appellant also filed a petition to approve replacement trustees.

In June 2019, the probate court held a hearing on the pending petitions and issued a tentative ruling, expressing many concerns with the proposed settlement.  On September 27, 2019, the court granted in part the petitions for approval of the settlement.  The court continued the balance of the petitions for approval, stating that "these petitions involve unresolved issues with the fitness of the proposed trustees, Bradford's capacity and best interests, and the terms of the Settlement."  The court also appointed a limited purpose GAL for appellant, citing its duty to ensure that the settlement was in appellant's best interest and its concerns as to appellant's limited capacity.

In early October 2019, appellant filed notice that the settlement agreement was null and void due to the court's rulings.  He also filed objections to the initial ruling and the further rulings.  Between October and December 2019, appellant filed multiple petitions for writ of mandate with this court, including a challenge to the probate court's appointment of the GAL and partial approval of the settlement.  We denied these petitions.

In November 2019, appellant appealed from the probate court's September 27, 2019 rulings.  In an unpublished opinion, *Lund v. First Republic Trust Company* (Jan. 30, 2020, B302634) (nonpub. opn.) (*Lund II*),

---

[5] This motion remained pending while the parties discussed settlement; appellant ultimately filed a renewed motion in 2020, discussed further below.

we concluded that the trial court's orders contained no final appealable orders. We therefore dismissed the appeals.

### 3.    *Fifth amended petition*

In February 2019, appellant filed a verified fifth amended petition "for redress for breach of trust," seeking orders (1) compelling the trustees to make the prior birthday distributions[6] "based upon reconsideration after Arizona judgment"; (2) compelling the trustees to "distribute outstanding and future sub-trust income"; (3) compelling an accounting; (4) removing all trustees and appointing temporary trustees; and (5) surcharging the trustees and reducing their compensation. He alleged that the Arizona court found that he had "consistently demonstrated that he makes mature and appropriate financial decisions," and thus that "no reasonable exercise of discretion by a trustee could deny Bradford his Birthday Distributions." He further alleged that the Arizona court found that he had established "presently, in 2016, he is not incapacitated, an appointment of a guardian is not necessary to provide for his demonstrated needs, and [his] needs are currently being properly met by less restrictive means."

## II.    Renewed Motion to Seal

Appellant filed a renewed motion to seal on March 25, 2020, again seeking to seal exhibits 14, 22, 30, 40, 47, 48, 55, 83, 84, 89, and 118,[7] filed by respondents in support of their response to the court's 2018 OSC. He discussed the exhibits in the following two categories:

---

[6] In addition to their prior denial of his 35th and 40th birthday distributions, appellant alleged that respondents denied his 45th birthday distribution in 2015.

[7] Appellant's motion at times also requested sealing of exhibit 77 (containing deposition excerpts), but at other times omitted that exhibit. The trial court included exhibit 77 in its ruling denying the motion to seal. Appellant has not listed exhibit 77 in his papers on appeal. We therefore consider any argument regarding this exhibit forfeited. In any event, our conclusion regarding exhibit 77 would be the same as the others presented here.

6

The first category included exhibits 14, 22, 40, and 118, all of which were introduced in the 2006 and/or 2009 Arizona proceedings.[8] Exhibit 14 is an April 10, 2006 investigative report filed in the 2006 Arizona proceeding by Robert Segelbaum, a court-appointed investigator. Exhibit 22 is a November 30, 2009 letter by Dr. Drake Duane, filed in the 2009 Arizona proceeding. Exhibit 40 is a May 17, 2011 investigative report by Segelbaum, filed in the 2009 Arizona proceeding. Exhibit 118 is a March 20, 2006 physician's report by Dr. Duane, filed in the 2006 Arizona proceeding.

Appellant argued that all four exhibits were sealed by the Arizona courts and that he had established an overriding interest in having them sealed in the instant action in order to "maintain[ ] the integrity of out-of-state orders." In support of his contention that the four exhibits had been previously sealed in Arizona, appellant filed the declaration of his attorney, Sandra Slaton, who stated that the exhibits "are all sealed documents in Arizona." Slaton's declaration cited and attached three documents: (1) Exhibit A, one page of the docket from the 2006 Arizona proceeding, with entries indicating that certain documents were sealed; (2) Exhibit B, an order entered in May 2011 in the 2009 Arizona proceeding, sealing a document described only as "Investigator's Report"; and (3) Exhibit C, a minute entry from trial on April 1, 2016 in the 2009 Arizona proceeding, listing the exhibits received in evidence by exhibit number (including a highlighted entry for "Exhibit 9") and ordering the day's proceedings sealed.

The second category of exhibits included four excerpts of deposition transcripts (exhibits 30, 47, 48, and 55) and three interrogatory responses by appellant (exhibits 83, 84, and 89). Specifically, exhibit 30 is 20 pages of excerpts from the 2010 deposition of appellant's father, William, discussing multiple topics. Exhibit 47 is six pages of excerpts from the 2012 deposition of appellant's step-sister, Schemitsch, including discussions of the house she and her family share with appellant, how many bedrooms there are, the expenses she covers, and work that she performs for appellant. Exhibit 48 is over 50 pages of excerpts from the 2012 deposition of William. Exhibit 55 is a

---

[8] In their response to the OSC, respondents lodged these four exhibits conditionally under seal, stating that they were doing so in an abundance of caution to allow appellant to move to seal them.

single page from William's 2013 deposition, discussing certain services performed by William and Sherry for appellant. Exhibits 83, 84, and 89 are appellant's responses to five special interrogatory requests, including information regarding the trustees of one of appellant's trusts, his financial managers, and his powers of attorney. There is no indication in the record that any of this evidence was designated as confidential at the time it was produced.

Appellant argued that these seven exhibits should be sealed because they contained "confidential, personal, and private information regarding Mr. Lund that the public does not need access to." In a single paragraph, he also argued that he met the standard for sealing under rule 2.550[9] because his "right to privacy and the confidential nature of the information . . . overrides all interest the public may have to access [the] documents" and "[t]here is a substantial probability that Mr. Lund will be prejudiced by not sealing" the exhibits. Appellant did not identify any particular portion of any document to be sealed. Instead, he argued that the exhibits included "deposition testimony regarding Mr. Lund, deposition testimony regarding Mr. Lund's alleged health status, answers to special interrogatories which reveal information regarding a private trust," and "other private and confidential information" that "prejudicially implies a certain perception of Mr. Lund to the public that, in all likelihood, will be defeated."

In their opposition to the motion to seal, respondents argued that appellant failed to satisfy his burden to justify sealing any of the exhibits. They acknowledged that exhibits 14 and 118 were sealed by Judge Beckloff at the conclusion of the 2013 trial[10] and by this court in the 2014 appeal, and therefore suggested that if the court "finds good cause" to seal those exhibits,

---

[9] Pursuant to rule 2.550(d), the court may order a record sealed if it finds that: "(1) There exists an overriding interest that overcomes the right of public access to the record; [¶] (2) The overriding interest supports sealing the record; [¶] (3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; [¶] (4) The proposed sealing is narrowly tailored; and [¶] (5) No less restrictive means exist to achieve the overriding interest."

[10] The trial court also redacted its 2014 statement of decision in conformance with this sealing.

respondents "would not oppose" their sealing in these cases. With respect to exhibits 22 and 40, however, they contended that counsel for both parties read portions of those exhibits into evidence during the 2013 trial and appellant's counsel publicly filed the exhibits as part of the record for the 2014 appeal, and therefore appellant could not claim an overriding privacy interest in documents that had remained publicly available for over five years. They also argued that appellant had not established any of the requisite elements of rule 2.550 for any of the documents, including the requirements that his sealing request was narrowly tailored and that there were no less restrictive means to protect his privacy.

In reply, appellant argued that the release of his "personal, private information would be prejudicial to only Mr. Lund," and that an order sealing exhibits 22 and 40 "is narrowly tailored to protect the medical opinions and confidential investigator's report" as "the least restrictive alternative." As to the deposition excerpts, he argued that the "information included in these exhibits include[s] confidential trust information of one of Mr. Lund's trusts and testimony of witnesses regarding Mr. Lund."

At the hearing on the motion to seal on September 3, 2020, appellant's counsel argued that appellant had not put his mental capacity at issue, but even if he had, the materials should still be sealed because his medical history was private. She did not identify any particular information, instead citing appellant's "private, sensitive medical information." Respondents' counsel argued that the records were presumed public and appellant had not overcome that presumption based on his assertion of privacy, particularly in a case involving a large trust that had a significant public interest. In reply, appellant's counsel argued that the trustees "should be ashamed of themselves" for putting appellant's medical records in the public file in order to "keep embarrassing Mr. Lund and humiliating him every step of the way." At the conclusion of the hearing, the court took the motion under submission.

The court issued its ruling on September 16, 2020, denying the motion to seal. Citing rule 2.550(d), the court noted that the "common law right of access to public documents" was one that a party could overcome only by showing "an overriding interest." The court also found that "[t]he public has

9

greater interest in information critical to the Court's decision while minimally significant evidence can be more readily sealed."

Turning to the specific exhibits, the court rejected appellant's argument that it should seal Exhibits 14, 22, 40, and 118 in reliance on prior sealing orders in Arizona, finding that there were "substantial evidentiary deficiencies in the record as to what records were actually sealed by the Arizona court." The court found that appellant did not provide any Arizona sealing orders or protective orders clearly covering the exhibits at issue, and neither the Arizona docket nor Slaton's supporting declaration "are the best evidence that a protective order exists. Brad does not claim the protective orders for the 2006 reports are lost or inaccessible and has not offered any excuse not to supply it." The court further found that appellant failed to offer authority establishing an interest in "maintaining the integrity of out-of-state orders" as an "overriding interest" that would overcome the right of public access. The court reasoned that appellant "has provided no context for the Arizona court's sealing order. . . . It would not be appropriate for the Court to blindly follow an out-of-state order from nine years ago without any basis for doing so."

Although respondents did not dispute that Exhibits 14 and 118 were sealed by the Arizona court, the court concluded that "because of the strong presumption of public access and requirement that any sealing order be narrowly tailored, the Court is required to independently scrutinize seal requests." The court also found that it was in a "much different position" than the Arizona court regarding the sealing requests, because appellant 'has placed his own capacity at issue here by filing probate petitions challenging [respondents'] refusal to make birthday distributions from the [trust], since [respondents'] refusal was based on their determination that Brad was incapable of handling the distributions." As such, "[e]vidence relating to Brad's condition is immediately relevant to the issues he himself raised."

The court also relied on the fact that appellant "publicly filed Exhibits 22 and 40 as part of his Appellant's Appendix in his 2014 appeal . . . and Brad's counsel read excerpts from these exhibits at the 2013 Trial—which transcripts have not been sealed." Thus, appellant "clearly cannot maintain

that he has a 'reasonable expectation of privacy' for records he has left accessible to the public for years with no effort to (re-)seal those records."

The court also rejected appellant's broad contention that all of the exhibits contained "private" and/or "confidential" information, finding that appellant did not "make any distinction between the exhibits sought to sealed, much less identify 'specific facts' warranting sealing of these records. The motion should be denied for that alone, as Brad has not made the minimum requisite showing for sealing any record." The court recognized that a right to privacy *could* override the presumption of public access, but only where "there is a substantial probability of prejudice to a privacy interest of higher value than the public's right of access to court records." As such, the court found it was required to "engage in a balancing analysis, weighing the presumption of access against a variety of competing interests." The court recognized that appellant had a "legally cognizable privacy interest in matters pertaining to his health status," citing *Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1068 (*Oiye*). However, in this case, the court found that this privacy interest did not outweigh the presumption of public access, given that appellant had placed his health at issue "in his publicly filed probate petitions and federal complaint and, insofar as the Birthday Distributions are still at issue, his health continues to be a central issue in this action." Moreover, the court noted that the public had a "legitimate and heightened interest in records pertaining to the administration of several large testamentary trusts funded by and for Disney family members."

The court also found that appellant failed to identify a cognizable privacy interest in any of the other exhibits, "as he does not individually discuss what should be kept private about these exhibits." Moreover, appellant failed to establish a substantial probability that his right to privacy would be prejudiced absent sealing. Instead, the court found that appellant "provided only 'conclusory averments' that 'unspecified statements' were private and does not identify any specific or concrete consequences of these records being public. These conclusory assertions do not establish prejudice." The court also rejected appellant's motion as overly-inclusive, finding that appellant also did "not attempt to narrowly tailor his request at all or show that sealing is the 'least restrictive means' of protecting his interests."

11

Notably, appellant "fail[ed] to identify any specific passages that contain confidential information and instead makes conclusory averments that they contain private information," while seeking to seal the entire document. Consequently "the Court cannot determine whether redactions would be a viable alternative because the Court does not know what information Brad considers private."

Appellant timely appealed from the order denying his motion to seal.[11]

## DISCUSSION

### I.    Requests for Judicial Notice

As an initial matter, both parties filed requests for judicial notice on appeal, as well as oppositions to the other party's request. Appellant requested judicial notice of two Arizona court documents despite acknowledging that they are not directly relevant to the motion to seal and they were not part of the record below.  Similarly, respondent requested judicial notice of a series of articles and internet postings, none of which were part of the record before the trial court.[12]  We deny these requests as they seek judicial notice of irrelevant materials outside of the record.  (See *Malek*

_____

[11] Orders concerning the sealing of documents are appealable as collateral orders.  (*Oiye, supra*, 211 Cal.App.4th at p. 1064.)

[12] We note that both parties requested that we take judicial notice of documents that were not before the trial court, and then chided the opposing party for the same conduct.  In addition, both parties engaged in pages of hyperbolic mudslinging in their briefs.  For example, appellant accuses respondents of "systematic vindictiveness and hostility" against him and engaging in "ad hominem personal attacks on Appellant, his family, and anybody who stands with him."  For their part, respondents' brief included a lengthy introduction purporting to explain appellant's "nefarious" intent in seeking to seal documents as part of a "secrecy strategy"  with the "ultimate goal" of "sealing the entire record."  These statements are neither supported by citations to the record nor relevant to this appeal.  Indeed, in their opposition to appellant's request for judicial notice, respondents admitted their introduction was merely "contextual background," and it was therefore unnecessary for appellants to get "bogged down" in a "fruitless frolic and detour" by attempting to refute respondents' claims.  The parties are ill-served by this conduct—it wastes the court's time, contributes to increasingly bloated briefing as each party responds to irrelevant accusations lodged by the other, and distracts from the actual issues at hand.

*Media Group LLC v. AXQG Corp.* (2020) 58 Cal.App.5th 817, 825 ["Any matter to be judicially noticed must be relevant to a material issue."], citing *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 ["Reviewing courts generally do not take judicial notice of evidence not presented to the trial court. Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.'"], quoting *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.)

Respondent also requested judicial notice of a portion of the appellant's appendix in the 2014 appeal. Appellant does not oppose this request. We grant respondent's request regarding the record of the 2014 appeal.

## II.    Standard of Review

Appellant contends we should apply a de novo standard of review because his appeal involves errors of law. We disagree. Appellant has not identified any legal errors that require independent review. Although he contends that the trial court "ignor[ed] the holding" in *Oiye, supra*, 211 Cal.App.4th 1036, regarding his right to privacy of medical information, the record does not support this characterization of the issues on appeal. The trial court explicitly recognized appellant's "legally cognizable privacy interest in matters pertaining to his health status," citing *Oiye,* but concluded appellant had not established that this interest outweighed the public's interest in access to court records, nor had appellant met any of the additional requirements for sealing under rule 2.550.

We similarly reject appellant's contention that the trial court "ignored the Full Faith and Credit Clause," when it refused to adopt the Arizona court's sealing orders. Rather, the trial court found appellant failed to establish the existence or bases of those orders—an evidentiary conclusion, not a legal one. Finally, whether appellant waived his right of privacy by, for example, publicly filing some of the exhibits at issue is a "factual question, tested on appeal under the substantial evidence rule." (*Savaglio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 588, 598 (*Savaglio*) [reviewing trial

13

court's determination of waiver of right to seal where party previously publicly filed documents].)

Thus, we review the trial court's factual findings regarding the sealing requirements for substantial evidence, and the trial court's denial of the motion to seal for an abuse of discretion.  (See *Overstock.com, Inc. v. Goldman Sachs Group, Inc.* (2014) 231 Cal.App.4th 471, 492 (*Overstock*) ["we review the ultimately discretionary decision to deny sealing by inquiring whether substantial evidence supports the trial court's express or implied findings that the requirements for sealing are not met"]; see also *Oiye, supra*, 211 Cal.App.4th at p. 1067 [reviewing "the trial court's decision to order the documents sealed under the abuse of discretion standard, and any factual determinations made in connection with that decision will be upheld if they are supported by substantial evidence"].)

III. **Analysis**

A. ***Legal Framework***

The public has a First Amendment right of access to civil litigation documents filed in court and used at trial or submitted as a basis for adjudication.  As articulated in *NBC Subsidiary (KNBC–TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1210, "the public has an interest, in all civil cases, in observing and assessing the performance of its public judicial system, and that interest strongly supports a general right of access in ordinary civil cases."  As a result, there is a strong presumption in favor of public access to substantive courtroom proceedings in ordinary civil cases, and the transcripts and records pertaining to these proceedings. (*Id.* at pp. 1212, 1217.)

These First Amendment principles are embodied in California's "sealed records rules," rules 2.550 and 2.551. (See *Overstock, supra*, 231 Cal.App.4th at p. 486; *Savaglio, supra*, 149 Cal.App.4th at pp. 596-597.)  Under these rules, a party "requesting that a record be filed under seal must file a motion or an application for an order sealing the record. The motion or application must be accompanied by a memorandum and a declaration containing facts sufficient to justify the sealing." (Rule 2.551(b)(1).)

The "court must not permit a record to be filed under seal based solely on the agreement or stipulation of the parties." (Rule 2.551(a).)  The court

14

may order a record sealed only if it finds that: "(1) There exists an overriding interest that overcomes the right of public access to the record; [¶] (2) The overriding interest supports sealing the record; [¶] (3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; [¶] (4) The proposed sealing is narrowly tailored; and [¶] (5) No less restrictive means exist to achieve the overriding interest." (Rule 2.550(d).)

## B.    *Exhibits 14, 22, 40, and 118*

Appellant devotes much of his opening brief on appeal to arguing that he has a constitutional right to privacy over his personal medical and financial information.  But this right is not in dispute—both respondents and the trial court recognized appellant's right to privacy and that his right implicated at least portions of the Arizona 2006 and 2011 investigative reports (Exhibits 14 and 40), as well as the 2009 letter and 2006 report from appellant's physician, Dr. Duane (Exhibits 22 and 118).[13]  Appellant contends that the sealing analysis should end there because the "*Oiye* holding applies as a matter of law," meaning that the privacy of one's medical information outweighs the public's right of access in every instance.  This contention is belied by the language of *Oiye* itself.

In *Oiye, supra*, 211 Cal.App.4th at p. 1044, the plaintiff brought a tort action alleging that the defendant sexually molested her from age 12 to 21. She sought an injunction related to the defendant's assets; in opposition, the defendant attached the plaintiff's 52-page personal diary, which she wrote while undergoing inpatient medical treatment following the molestation.  (*Id.* at p. 1046.) The plaintiff moved to seal exhibits, including two of her medical records and the journal, stating that she did not know how the defendant obtained her records and would suffer "embarrassment and distress" at having those records made public.  (*Id.* at pp. 1062-1063.)  The court granted the sealing motion and the defendant appealed.  (*Ibid*.)  The appellate court recognized "'that a person's medical history, including psychological records,

_____

[13] It was similarly undisputed that appellant's individually identifiable medical information is presumed confidential under California's Confidentiality of Medical Information Act (Civ. Code § 56 et seq.).  (See *Oiye, supra*, 211 Cal.App.4th at p. 1068.)

15

falls within the zone of informational privacy protected' by the state and federal Constitutions," but also acknowledged that "[p]rivacy concerns are not absolute [and] must be balanced against other important interests." (*Id.* at pp. 1068, 1070, quoting *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 37.) On balance, the court concluded "that the public's general right of access to court records recognized in rule 2.550 must give way to the public's concern about the privacy of medical information *in this case, particularly when the information appears so tangentially related to the litigation.*" (*Id.* at p. 1070, italics added.) This discussion makes clear that the *Oiye* court balanced the relevant factors under the circumstances presented, and concluded that the trial court had not abused its discretion in sealing the documents. It does not follow that the trial court was required to do the same under different facts simply because a privacy right was raised.[14]

Moreover, as we previously indicated, we reject appellant's suggestion that the trial court "ignored" the holding in *Oiye*. The trial court acknowledged appellant's privacy right, but found that it was outweighed in the circumstances in this case. We do not find that determination was an abuse of discretion. Unlike in *Oiye, supra,* 211 Cal.App.4th at p. 1070, where the court found the plaintiff's personal diary was only tangentially related to the defendant's "opposition to a preliminary injunction long since granted,"

---

[14] During oral argument on appeal, appellant's counsel contended that rule 2.550 did not apply because rule 2.550(a)(2) exempts "records that are required to be kept confidential by law." He argued that the records at issue here qualified because they were medical records and also had been deemed confidential by Arizona courts. Appellant raised this argument for the first time in his reply brief, and even then it was limited to a single reference during his discussion of the Full Faith and Credit Clause of the United States Constitution. Appellant has not shown good cause for his failure to timely raise this argument; we therefore deem it forfeited and will not consider it. (See, e.g., *Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356, fn. 6 ["An appellate court is not required to consider any point made for the first time at oral argument."]; *People v. Clayburg* (2012) 211 Cal.App.4th 86, 93 ["Withholding a point until the reply brief deprives the respondent of an opportunity to answer it. . . . Hence, a point raised for the first time therein is deemed waived and will not be considered, unless good reason is shown for failure to present it before."] (citations omitted).)

16

here, the trial court found that appellant's medical records were directly relevant because he had put his capacity at issue. In his fifth amended petition, as he had in previous petitions, appellant alleged that the trustees improperly denied his birthday distributions based on a finding that he lacked the mental capacity to manage the funds when the evidence (and the findings of the 2009 Arizona proceeding) demonstrated otherwise. As such, evidence related to appellant's mental capacity was directly relevant to the allegations of the fifth amended petition, as well as to the court's OSC regarding appointment of a GAL, which appellant had vigorously opposed. Although appellant had a legitimate privacy interest in these records, the court determined that interest did not overcome the countervailing interest of public access, given the material relevance of the evidence and the heightened interest "when probate involves a large estate with on-going long-term trusts." (*Estate of Hearst* (1977) 67 Cal.App.3d 777, 784.) Appellant fails to establish that the court abused its discretion in determining that the balance of interests fell in favor of continued public access here.

Additionally, the trial court found that appellant could not establish a reasonable expectation of privacy as to exhibits 22 and 40, which were included as exhibits in the 2013 trial and which appellant publicly filed as part of his appendix in the 2014 appeal.[15] Consequently, those exhibits have remained publicly available for over nine years. Respondents also point out that appellant publicly filed Exhibit 118 in the instant appeal as part of his appendix (attached as an exhibit to his 2006 Arizona guardianship petition). Appellant's suggestion that these documents are not fully part of the public record because they are not "readily available to the public online," and make up a small portion of a large appellate record is unsupported by any authority. There is no indication in the record that appellant has made any attempt to seal these documents in the interim. Moreover, discussion of appellant's mental capacity is present in varying degrees throughout these cases, in many publicly available documents,

---

[15] Appellant asserts that the trial exhibits were returned to the parties following trial in 2013. However, the transcripts were not sealed and any portion of the exhibits read into the record or discussed by witnesses therefore remains available.

including our prior opinion in the 2014 appeal and the decisions by the Arizona courts. Although appellant successfully moved to seal exhibits 14 and 118 in the 2014 appeal, he did not seek to seal exhibits 22 or 40; he has not articulated what information in exhibits 14 and 118 retains an expectation of privacy because, for example, it has not been made public in subsequent exhibits or in any of the other myriad places where his mental capacity has been discussed. Consequently, we find no error in the trial court's conclusion that appellant acted inconsistently with an intent to protect his privacy rights. (See *Savaglio, supra*, 149 Cal.App.4th at pp. 600–601 ["Wal–Mart's conduct was so inconsistent with an intent to enforce its rights to obtain sealed records under the Rules of Court as to induce a reasonable belief that it had relinquished such right."].)[16]

Appellant also contends the court erred in rejecting his request to afford "full faith and credit" to the Arizona court orders sealing exhibits 14, 22, 40, and 118. The trial court found that appellant failed to provide sufficient evidence to prove which exhibits were sealed by the Arizona court or the basis justifying the sealing. We agree. Appellant did not provide the Arizona court orders on which he relied, and offered no explanation for his failure to do so. Instead, he attached a docket sheet, an order sealing an unspecified "investigator's report," and the minutes from trial admitting "exhibit 9" (not otherwise identified) and sealing that day's proceedings. We find no error in the trial court's conclusion that this evidence was insufficient to establish that the Arizona court sealed the same documents appellant seeks to seal here. Appellant's assertion that he is not required under rules 2.550 and 2.551 to "submit the original or properly authenticated versions" of a court order misses the point. The sealing rules require that appellant

---

[16] Citing *Savaglio, supra*, 149 Cal.App.4th at pp. 599-600, appellant's counsel asserted during oral argument that appellant--as the "holder" of his privacy right--could not have waived that right due to actions performed by his counsel, such as publicly filing documents. Appellant has raised this contention for the first time at oral argument and has therefore forfeited it. (See *Kinney v. Vaccari, supra*, 27 Cal.3d at p. 356, fn. 6.) Moreover, the *Savaglio* court found that Wal-Mart *had* waived its right to move to seal documents because its counsel had publicly filed them in an earlier writ proceeding. (*Savaglio, supra*, 149 Cal.App.4th at pp. 599-600.)

18

submit "facts sufficient to justify the sealing." (Rule 2.551(b)(1).) By failing to submit the court orders upon which he relies, he failed to satisfy this requirement.

Moreover, even if appellant proved that the Arizona court sealed the exhibits as he contends, the trial court rejected appellant's argument that this established an overriding interest requiring their sealing in this case. We agree. Appellant cites no authority establishing an overriding interest based on orders entered in different proceedings (guardianship and conservatorship), under the sealing laws of a different state, made more than a decade ago, or how that interest would be prejudiced absent sealing in these California probate matters.

The record also supports the trial court's conclusion regarding appellant's failure to meet the remaining elements of rule 2.550 for exhibits 14, 22, 40, and 118. Appellant made no attempt to demonstrate that the proposed sealing was narrowly tailored or that no less restrictive means existed to protect his privacy. The court was within its discretion to reject appellant's motion for this reason as well.

### C.    *Exhibits 30, 47, 48, 55, 83, 84, and 89*

As for the remaining exhibits, which are made up of 75 pages of deposition excerpts and interrogatory responses, we agree with the trial court's conclusion that appellant failed to establish *any* of the requirements of rule 2.550. Appellant argues that these exhibits "contain intimate details of [his] private life" and "other confidential information" without further elaboration. He has not identified any particular portions of this mass of exhibits that would give rise to an overriding interest. Nor has he previously designated these documents as confidential or otherwise acted consistently with an understanding that they were private. Rather, as respondents point out, portions of the depositions were played at the 2013 trial.

Moreover, appellant again has made no attempt to show how his request is narrowly tailored or the least restrictive means available. As the trial court pointed out, appellant "fails to identify any specific passages that contain confidential information and instead makes conclusory averments that they contain private information," while seeking to seal the entire exhibits, including a 53 page deposition excerpt from appellant's father

19

covering a wide range of topics.  This cannot satisfy appellant's burden to demonstrate a right to seal.  (See *Overstock*, *supra*, 231 Cal.App.4th at p. 500 ["the trial courts can, and should, view overly inclusive sealing efforts with a jaundiced eye"].)

Appellant also relies on *Overstock*, *supra*, 231 Cal.App.4th 471, for the proposition that these exhibits "should be sealed for good cause" because "there are large portions which are irrelevant and uncited."  Putting aside the issue that appellant failed to identify any such portions of any exhibit, the holding of *Overstock* does not assist him here.  *Overstock* involved a request to seal an enormous volume of documents filed in connection with a motion for summary judgment, all of which had been designated as confidential under the parties' protective order, but thousands of pages of which had not been referenced in the summary judgment papers.  The court concluded that "the trial court could have stricken thousands of pages of the confidential discovery materials plaintiffs submitted but never referenced" or, alternatively, could have found good cause to place them under seal given their lack of relevance to the issues at hand.  (*Id*. at p. 500.)  Here, appellant did not designate the exhibits at issue as confidential at the time they were produced in this case, nor did appellant seek to strike them as irrelevant below.  He cannot now rely on *Overstock* to seal these exhibits.

## DISPOSITION

The order denying the motion to seal is affirmed.  Respondents are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:


WILLHITE, ACTING P.J.                              CURREY, J.


20