Filed 10/25/22  Taft v. Boston Scientific CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| FOSTER TAFT,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION,<br><br>Defendant and Respondent. | F082306<br><br>(Tulare Super. Ct. No. VCU283754)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Nathan D. Ide, Judge.

Foster Taft, in pro. per., for Plaintiff and Appellant.

Shook, Hardy & Bacon, Frank C. Rothrock, Eva M. Weiler, and Mayela C. Montenegro-Urch, for Defendant and Respondent.

-ooOoo-

The superior court sustained a demurrer to plaintiff and appellant Foster Taft's operative complaint without leave to amend on the grounds that res judicata barred the action.  We conclude the demurrer was well-taken, though on different grounds than the superior court, and affirm.

# FACTS

**Case No. 268870**

On August 18, 2017, Taft filed a second amended complaint in Tulare County Superior Court case No. 268870.[1] Pertinent here, that complaint alleged defendants Sukhvinder Bhajal, M.D. (Dr. Bhajal) and Boston Scientific Corporation (Boston Scientific) wrongfully failed to provide Taft with certain medical records of his father after his death.

Taft's father was a patient of defendant cardiologists Sukhvinder Bhajal, M.D., and Dennis Johnson, M.D. He had an implanted defibrillator from Boston Scientific. He died on March 15, 2016, with a listed cause of death of ventricular fibrillation.

Taft sent a request to Boston Scientific that they provide electrocardiograms (ECGs) from all of 2016 and from December 2015. The ECGs at Boston Scientific were in an account under Dr. Bhajal's name.

On April 5, 2016, Dr. Johnson provided Taft with medical records, including: ECGs from February 12, 2016, and March 15, 2016, and a report created by "a downloading of device information" on April 4, 2016 (several weeks after Taft's father's death).

The device report indicated there had been seven "events" since the device was reset on March 8, 2016. Four of the "events" were irrelevant, having registered on April 4 when the device was explanted from Taft's father's body, well after his death. The other three "events" occurred on March 12, 14, and 15. No ECGs dated March 12 or March 14 were provided. A technician with Boston Scientific explained the records provided were "all that was available[] and on the device."

Boston Scientific informed Taft that the device's storage capacity was limited to "about 17 minutes." The device would overwrite old information with new information.

In August 2016, Taft's father's wife requested medical records from Dr. Bhajal. Taft received medical records, including an ECG from March 12th. However, there were no

---

[1] Because complaints from separate cases are relevant here, we will refer to this as the -870 complaint.

ECGs dated March 14th provided. Taft followed up with Dr. Bhajal's office, which responded that no further records could be provided.

Taft made a written request for the March 14 ECG to Dr. Johnson. Dr. Johnson replied that he had no March 14 ECG in his possession. Taft requested that Dr. Bhajal provide all ECGs from January, February, and March 2016. No additional ECGs were provided.[2]

In March 2017, a paid consultant informed Taft "that the March 14th event may have never been recorded and could have been considered relatively benign and the limited space would be preserved for more important events."

The complaint asserted that "[a]ll expressed concerns regarding the March 14th ECG have been ignored."

Dr. Bhajal and Boston Scientific filed demurrers to the second amended complaint. Dr. Bhajal argued that he had already produced the records in his possession as evidenced by the complaint's allegation that his office informed plaintiff they could not provide any more records.

The trial court sustained a demurrer without leave to amend. It reasoned:

> "Plaintiff asserts nothing to suggest either individual doctor has or ever had the requested data in their records. Plaintiff alleges a representative from Defendant Boston Scientific provided Plaintiff with all data on the device after decedent's death. There was no data for March 14, 2016. [Citation.] In addition[,] Plaintiff asserts a consultant advised that there may have been no recorded data for March 14, 2016."

We affirmed the trial court's ruling as to the medical records cause of action in our nonpublished opinion in *Taft v. Bhajal* (Apr. 16, 2020, F076824). We concluded that when the allegations of the complaint were taken as a whole, the gist of the cause of action was that the device should have created an ECG record for March 14 but failed to do so. (See

_____

[2] However, no facts were alleged establishing that any additional ECGs existed beyond those from February 12, March 12, and March 15 previously provided. Specifically, the complaint did not allege that an ECG was taken and retained every time there was an "event" logged.

3.

*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [courts are to "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context"].) Such an allegation cannot support a claim of improper failure to *provide* medical records upon request.[3]

In his appellate briefing in *Taft v. Bhajal*, *supra*, F076824, Taft claimed his "request for ECGs encompasses *years* of ECGs which are at [Boston Scientific] if they have not been deleted since the initiation of the actions." (Italics added.) However, we concluded that the *allegations of the complaint* did not embody such a claim. Instead, "a fair reading of the [second amended complaint] shows that its first three causes of action are predicated on the 'missing' March 2016 ECGs, not some unspecified earlier ECGs dating back through 2009." (*Id.* at p. 8, fn. 9.)

**Case No. 283754**

On September 21, 2020, Taft filed an amended complaint against Boston Scientific in a different case: Tulare County Superior Court case No. 283754. We will refer to this as the -754 complaint.

The -754 complaint, which is only 24 sentences long, included the following alleged facts: Dr. Bhajal implanted a defibrillator, made by Boston Scientific, in Taft's father on September 24, 2009. In addition to defibrillating and pacing, the defibrillation device also created, stored, and transmitted ECGs. The device periodically uploaded ECGs to Boston Scientific. Boston Scientific still has all of the ECGs.

Taft requested in writing that Boston Scientific provide all ECG records from the device. Boston Scientific has not provided all the ECGs records it has to Taft.

Boston Scientific filed a demurrer to the -754 complaint. Boston Scientific argued that Taft's claim was barred by res judicata. Boston Scientific also briefly contended that

---

[3] We also concluded, in *Taft v. Bhajal*, *supra*, F076824, that Taft was entitled to leave to amend his wrongful death cause of action. That cause of action in case No. 268870 is the subject of another appeal before this court.

4.

Taft failed to state a claim under Health & Safety Code section 123110 because the statute only applies to healthcare providers, not device manufacturers like Boston Scientific.[4]

The court sustained Boston Scientific's demurrer without leave to amend on res judicata grounds. It is from the judgment of dismissal in case No. 283754 that Taft presently appeals.

## DISCUSSION

**Demurrer**

" ' "A demurrer tests the legal sufficiency of the complaint." [Citations.] On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law. [Citation.] We deem to be true all material facts properly pled [citation] and those facts that may be implied or inferred from those expressly alleged.' " (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650.)

We liberally construe the allegations of the complaint. (*Smith v. BP Lubricants USA Inc.* (2021) 64 Cal.App.5th 138, 145.)

"An order sustaining a demurrer without leave to amend may be affirmed on any ground stated in the demurrer, even if the trial court did not act on that ground." (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2019) 42 Cal.App.5th 918, 934.)

**Right to Medical Records Under Health & Safety Code Section 123100 Et. Seq.**

A patient's personal representative is entitled to inspect and/or obtain copies[5] "patient records" upon request and payment of reasonable costs. (Health & Saf., § 123110, subds. (a) & (b)(1).) Patient records in this context is defined as follows,

---

[4] While this argument was only presented in the memorandum of points and authorities, rather than the demurrer itself, it is still cognizable as a ground for affirmance. (See *Rogers v. Board of Ed. of City of Los Angeles* (1968) 261 Cal.App.2d 355, 358–359.)

[5] The health care provider must transmit the copies within 15 days after receiving the request. (§ 123100 et seq.)

" 'Patient records' means records in any form or medium *maintained by, or in the custody or control of, a health care provider* relating to the health history, diagnosis, or condition of a patient, or relating to treatment provided or proposed to be provided to the patient.  'Patient records' includes only records pertaining to the patient requesting the records or whose representative requests the records.  'Patient records' does not include information given in confidence to a health care provider by a person other than another health care provider or the patient, and that material may be removed from any records prior to inspection or copying under Section 123110 or 123115.  'Patient records' does not include information contained in aggregate form, such as indices, registers, or logs."  (*Id*. at § 123105, subd. (d), italics added.)

The statute defines "health care provider" as "any of the following:"

"(1) A health facility licensed pursuant to Chapter 2 (commencing with Section 1250) of Division 2.

"(2) A clinic licensed pursuant to Chapter 1 (commencing with Section 1200) of Division 2.

"(3) A home health agency licensed pursuant to Chapter 8 (commencing with Section 1725) of Division 2.

"(4) A physician and surgeon licensed pursuant to Chapter 5 (commencing with Section 2000) of Division 2 of the Business and Professions Code or pursuant to the Osteopathic Act.

"(5) A podiatrist licensed pursuant to Article 22 (commencing with Section 2460) of Chapter 5 of Division 2 of the Business and Professions Code.

"(6) A dentist licensed pursuant to Chapter 4 (commencing with Section 1600) of Division 2 of the Business and Professions Code.

"(7) A psychologist licensed pursuant to Chapter 6.6 (commencing with Section 2900) of Division 2 of the Business and Professions Code.

"(8) An optometrist licensed pursuant to Chapter 7 (commencing with Section 3000) of Division 2 of the Business and Professions Code.

"(9) A chiropractor licensed pursuant to the Chiropractic Initiative Act.

"(10) A marriage and family therapist licensed pursuant to Chapter 13 (commencing with Section 4980) of Division 2 of the Business and Professions Code.

"(11) A clinical social worker licensed pursuant to Chapter 14 (commencing with Section 4990) of Division 2 of the Business and Professions Code.

"(12) A physical therapist licensed pursuant to Chapter 5.7 (commencing with Section 2600) of Division 2 of the Business and Professions Code.

"(13) An occupational therapist licensed pursuant to Chapter 5.6 (commencing with Section 2570).

"(14) A professional clinical counselor licensed pursuant to Chapter 16 (commencing with Section 4999.10) of Division 2 of the Business and Professions Code.

"(15) A speech-language pathologist or audiologist licensed pursuant to Chapter 5.3 (commencing with Section 2530) of Division 2 of the Business and Professions Code.

"(16) A physician assistant licensed pursuant to Chapter 7.7 (commencing with Section 3500) of Division 2 of the Business and Professions Code.

"(17) A nurse practitioner licensed pursuant to Article 8 (commencing with Section 2834) of Chapter 6 of Division 2 of the Business and Professions Code." (Health & Saf. Code, § 123105, subd. (a).)

A patient's representative may bring an action against "the health care provider" to enforce the obligations described in Health and Safety Code section 123110. (Health & Saf. Code, § 123120.)

**Boston Scientific is Not a Health Care Provider**

Taft seeks to enforce rights under Health and Safety section 123110 against Boston Scientific. However, the statutory scheme only permits enforcement actions against "the health care provider." (Health & Saf. Code, § 123120.) The statute's definition of "health care provider" tracks well with the colloquial use of that term, encompassing health practitioners such as doctors, dentists, nurses, chiropractors, etc. The definition simply does not include device manufacturers like Boston Scientific. For this reason, the complaint fails to state a cause of action and is not susceptible of amendment.[6]

---

[6] Because this is an independently sufficient grounds for sustaining the demurrer without leave to amend, we do not address res judicata or any other contentions.

7.

**The Confidentiality of Medical Information Act is No Help to Taft**

Taft pivots to a different statutory scheme, the Confidentiality of Medical Information Act. (Civ. Code, §§ 56, et seq. (CMIA).) That law " 'is intended to protect the confidentiality of individually identifiable medical information obtained from a patient by a health care provider, while at the same time setting forth limited circumstances in which the release of such information to specified entities or individuals is permissible.' " (*Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1068.)

The CMIA generally requires that medical information be kept confidential. (Civ. Code, § 56.101, subd. (a).) However, it also provides for several exceptions. (See *id.*, at § 56.10.) For example, the CMIA provides that health care providers "shall disclose medical information if the disclosure is compelled by" court order, search warrant, etc. Also included in this list of circumstances in which medical information shall be disclosed is requests made pursuant to Health and Safety Code section 123100, et seq. (Civ. Code, § 56.10, subd. (b)(7).)

Taft argues that Boston Scientific qualifies as a "provider of health care" under the CMIA and is therefore required to provide records under Civil Code section 56.10, subdivision (b)(7). However, we need not resolve whether Boston Scientific is a "provider of health care" under the CMIA because even if it were, Taft's claim would still fail. As explained above, the CMIA sets forth broad confidentiality requirements viz-a-viz third parties. Civil Code section 56.10, subdivision (b)(7) merely clarifies that the CMIA's confidentiality requirements pose no barrier to the disclosures required by Health and Safety Code section 123100, et seq. It does not alter the scope of the substantive right to records set out in section 123100, et seq.[7]

---

[7] This common sense reading of the CMIA is bolstered by its definition of a provider of health care:

"(a) Any business organized for the purpose of maintaining medical information, as defined in subdivision (j) of [Civil Code] Section 56.05, in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for

Because we concluded above that Taft is not entitled to enforce an action to obtain records described in Health and Safety Code section 123100, et seq., against Boston Scientific, and since the CMIA does not enlarge the rights that may be enforced pursuant to Health and Safety Code section 123120, his complaint fails.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

POOCHIGIAN, J.

WE CONCUR:

HILL, P. J.

DETJEN, J.

---

purposes of allowing the individual to manage his or her information, or for the diagnosis and treatment of the individual, shall be deemed to be a provider of health care subject to the requirements of this part. *However, this section shall not be construed to make a business specified in this subdivision a provider of health care for purposes of any law other than this part*, including laws that specifically incorporate by reference the definitions of this part." (Civ. Code, § 56.06, subd. (a), italics added.)

9.